**STANLEY D. SMITH, Petitioner**
**v.**
**DENISE A. HENLEY, Respondent**

Family No. ST-14-DI-88
Superior Court of the Virgin Islands
Division of St. Thomas and St. John
December 15, 2016

DARREN JOHN-BAPTISTE, ESQ., St. Thomas, USVI, *Attorney for Petitioner.*

JULIE GERMAN EVERT, ESQ., St. Thomas, USVI, *Attorney for Respondent.*[1]

---

[1] The Court granted an unopposed Motion to Withdraw as Counsel filed by Attorney Julie German Evert on September 30, 2016.

HINDS ROACH, *Judge*

## MEMORANDUM OPINION

### (December 15, 2016)

**THIS MATTER** came before this Court on March 9, 2016 for a Final Hearing pursuant to Stanley D. Smith's (Mr. Smith) Complaint for Divorce, filed July 10, 2014.

This Court vacated an earlier Opinion and Order on this case, issued on August 17, 2016 and August 18, 2016, respectively.[2]

The Court finds that pension and retirement benefits earned during a marriage constitute marital property in the Virgin Islands. Distribution of marital property must be equitable, as dictated by statute. Therefore, the Court will equitably apportion Mr. Smith's retirement benefits earned during the parties' marriage, in addition to distribution of the other marital property before the Court, to include real and personal property.

## FINDINGS OF FACT AND PROCEDURAL POSTURE

The parties were married on August 18, 1990 and separated on June 10, 2012. The union produced two offspring, Deja Smith and Qadry Smith, both now adults.

At the hearing the parties stipulated that there had been a breakdown of the marriage. Accordingly, a Divorce Absolute was granted by Order of this Court on May 25, 2016 *nunc pro tunc* to March 9, 2016.

The issues remaining for resolution are:

1. Distribution of certain real property at Estate Raphune Hill;
2. Ms. Henley's claim to certain personal property; and,
3. Ms. Henley's claim to a portion of Mr. Smith's pension benefits.

*Raphune Hill property.*

The Raphune Hill property was acquired in 2004. Mr. Smith made the initial down payment and is currently contributing payments to the existing debt on the property. Mr. Smith refinanced a loan he attained to pay for the property in 2011, and then again in 2014, when he took out

---

[2] This occurred via separate Order entered on December 15, 2016.

another loan through Government Employees Retirement System (GERS).[3] This GERS loan paid off credit card debt which was incurred from the parties' son's schooling, and the remainder of the debt on the land. Mr. Smith has paid all the property taxes which are up to date.

Ms. Henley did not provide any evidence, aside from her testimony, to support her claim that she contributed money via monthly payments for the Raphune Hill property expenses for a period from 2004 until 2010. Per Ms. Henley, she became unable to afford the monthly payments in 2010 due to an increase in her payment obligation for the parties' daughter's tuition loans.[4] Ms. Henley's unrefuted testimony was that, but for her credit, the parties would not have qualified for the necessary mortgage to purchase the Raphune Hill property. Both parties are named on the deed to the mortgage.

Ms. Henley requests that this Court order an auction and sale of the property and the parties share the net proceeds and in the costs and expenses of the sale equally, based on her monthly contributions and the fact that her name is on the deed. Mr. Smith requests that he retain the full interest on the property based on what he testified to be significant financial contributions.

### Personal property.

Ms. Henley claims there are jewelry items, photo albums, a place setting with sentimental value, compact discs, crystal goblets, among other personal effects, all belonging to her, still in Mr. Smith's possession. Ms. Henley testified as to what she believed was her lost jewelry and listed the items. Ms. Henley further contacted a local jeweller who, after looking at a catalogue and pointing out the jewelry she believed to be lost, advised her that the total cost of the allegedly lost jewelry would be ten thousand dollars ($10,000.00).

Mr. Smith testified that, although he threw away some of Ms. Henley's items during the years that Ms. Henley had been out of the home, he

---

[3] A GERS representative, Shoran D. Caines Sasso (Ms. Sasso), supported his testimony by stating that on June 24, 2014, Mr. Smith took a loan from his retirement. She also testified as to the other personal loan Mr. Smith took out from his pension benefits.

[4] Petitioner's Exhibits 1 & 2 show payments dating to November 2004 until November 2014 where the property was paid, according to his testimony, through loan payments that were deducted from his paychecks. Mr. Smith's Exhibit 12 also contains information about the loan, a portion of which was used to refinance an earlier loan to pay for the Raphune property.

currently has four boxes containing Ms. Henley's remaining personal property in his possession. Mr. Smith is uncertain as to what the boxes specifically contain.

Ms. Henley requests that Mr. Smith be ordered to immediately return all items that he believes belong to her, and that a money judgment be entered in the amount of ten thousand dollars ($10,000.00) for the jewelry Ms. Henley claims is or was in his possession. Mr. Smith agrees to return Ms. Henley's personal property currently in his possession.

### Pension proceeds.

Ms. Henley currently works at the Virgin Islands Carnival Committee. She testified at trial that she currently makes $35,000 per year, but acknowledged making $50,000 a year at the time of her deposition. Ms. Henley testified that she has been employed for twenty-two years.

Ms. Henley testified that she has a pension of $22,000 through the Girl Scouts of America which she is eligible to receive at the age of sixty-five (65). (Ms. Henley's Exhibit 2 states that the benefit is currently worth $22,333.81.) At time of trial she was fifty-one (51) and still working.

The Court heard testimony from Ms. Sasso, Director of Member Services for GERS, who testified that Mr. Smith receives a pension check twice a month. Ms. Sasso testified that the net amount of Mr. Smith's twice-monthly check is $1,223.14. She also testified that Mr. Smith had thirty one (31) years, five (5) months, and thirteen (13) days of government service at the time of his retirement on December 31, 2014. Ms. Sasso testified that Mr. Smith's annuity was effective January 1, 2015, but he did not receive his first payment until on or about April 15, 2015. Ms. Sasso testified to Mr. Smith's total contributions into the pension fund, although there was no testimony on what amount of contributions were made during the time period of the marriage.

Ms. Henley claims a portion of Mr. Smith's pension; specifically 50% of the amount accrued during the parties' twenty-five (25) year, six (6) month, and twenty (20) day marriage. Mr. Smith is not requesting any part of Ms. Henley's Girl Scout pension.

## RELEVANT LAW

■ The burden of proof that governs in civil actions is the preponderance of the evidence standard. V.I. CODE ANN. tit. 5, § 740(5).

The Superior Court, sitting as the finder of fact on a hearing on the merits, has a duty to resolve the factual dispute. *In re D.A.B.*, 63 V.I. 623, 628 (V.I. 2015) (citing *Moore v. Walters*, 61 V.I. 502, 508 (V.I. 2014) ("It is well established that, on appeal, [this] Court must defer to the credibility decision made by the factfinder, whether it be the judge or the jury.")) "Credibility determinations are the unique province of a fact finder, be it a jury, or a judge sitting without a jury." *DeFraites-Bergin v. Bd. of Dirs. of Burnett Towers Condo. Ass'n*, S. Ct. Civ. No. 2007/81, 2008 V.I. Supreme LEXIS 22, at *7 (V.I. Aug. 14, 2008) (unpublished) (quoting *United States v. Kole*, 164 F.3d 164, 177 (3d Cir. 1998)).

### *Raphune Hill property and personal property.*

In an action for divorce, the court has the authority to equitably divide personal and real property acquired by either spouse subsequent to the marriage. 16 V.I.C. § 109. "Whenever a marriage is declared void or dissolved the Court may without regard to any determination that the breakdown of the marriage was the fault of one party or the other, further decree (4) for the delivery to the wife of her personal property in the possession or control of the husband at the time of giving the judgment." 16 V.I.C. § 109(a)(4).

■ In the Virgin Islands, "marital property" is defined as all real and personal property acquired by either spouse subsequent to the marriage. 16 V.I.C. § 109(a)(7). The Supreme Court has approved the retroactive application of 16 V.I.C. § 109(a)(7). "By its plain text, section 109 does not preclude its application to divorce actions filed before the effective date of the statute." *Drayton v. Drayton*, 65 V.I. 325 (V.I. 2016). "[W]e conclude that 16 V.I.C. § 109(a)(7) was intended to apply to marital property distributions made on or after the effective date of the statute, December 19, 2014." *Id.* at 335 (citation omitted).

■ "[P]roperty is either personal property of one of the spouses or marital property; and the determination of which property is personal and which is marital is based on provable ownership. Where a party fails to prove ownership of the property in question, the property is considered marital property owned in equal shares by the spouses and subject to distribution by the trial court." *Inniss v. Inniss*, 65 V.I. 270, 278 (V.I. 2016) (citing *Morris v. Morris*, 20 V.I. 249, 254 (V.I. Terr. Ct. 1984)).

187

*Pension proceeds.*

The parties dispute whether government pensions are considered marital property subject to claim by the other spouse. Ms. Henley argues that *Fuentes v. Fuentes*, 38 V.I. 29 (V.I. Terr. Ct. 1997) (hereinafter, "*Fuentes I*") governs whether pensions are marital property. Mr. Smith cites Title 3 V.I.C. § 725 as barring the distribution of his government pension except for the "support of a spouse," which he argues is not present here because Ms. Henley waived her request for alimony during the hearing.[5]

The term "marital property" is defined by statute as "any real or personal property acquired by either spouse subsequent to the marriage," subject to enumerated exceptions.[6] 16 V.I.C. § 109(7). There is no further statutory specification within that provision as to what "personal property" may include. Therefore, the Court looks to other code provisions for guidance as to the definition. In the "General Provisions" title, under the "Rules of Construction" chapter, the Court finds a definition of "personal property" as including "money, goods, chattels, things in action, and evidence of debt." 1 V.I.C. § 41.[7]

---

[5] 3 V.I.C. § 725 reads, in its entirety: "(a) The rights of a person to any annuity or benefit or right accrued or accruing to any person under the provisions of this chapter and the various moneys in the System created by this chapter, are hereby exempted from levy and sale, garnishment, attachment, or any other legal process whatsoever, and shall be unassignable except as in this chapter specifically otherwise provided. (b) Notwithstanding subsection (a) of this section, the rights and benefits provided in this chapter are assignable only pursuant to actions for the support of a child, spouse, or other dependent, as ordered by any court of competent jurisdiction."

[6] The exceptions listed in 16 V.I.C. § 109(7) are not applicable but are included for reference: "(A) Property acquired by gift, bequest, devise, or descent; (B) Property acquired in exchange for property acquired prior to the marriage, or in exchange for property acquired by gift, bequest, devise, or descent; (C) Property acquired by a spouse after a decree of legal separation; (D) Any judgment or property obtained by judgment awarded to a spouse from the other spouse; (E) Property excluded by valid, written agreement of the parties; and (F) Income from property acquired by a method listed in subparagraphs (A) through (E), if the income is not attributable to the personal effort of a spouse."

[7] Money is defined as "1. The medium of exchange authorized or adopted by a government as part of its currency, 2. Assets that can be easily converted to cash, 3. Capital that is invested or traded as a commodity, 4. Funds; sums of money." BLACK'S LAW DICTIONARY 1158 (10th ed. 2009).

Because the Court lacks guidance by either statute or technically binding case law as to whether a pension fund falls within the definition of marital property in this jurisdiction, the Court must decide two issues.[8] First, whether pension benefits accrued during marriage constitute marital property. Second, if a pension fund constitutes marital property, how and when to distribute that property in the context of marital dissolution. The Court, faced in this case with a pension fund acquired by one spouse subsequent to a marriage, must make these determinations.

Due to the lack of statutory instruction and Supreme Court case law on whether pension funds constitute "marital property," as defined in 16 V.I.C. § 109(7), the Court finds it necessary to look to the common law and thus undertakes *Banks* analyses on the issues of whether a pension fund constitutes marital property and, if so, how to undertake an equitable distribution. *See* note 8 and accompanying text.

*Pension Funds Acquired During Marriage Constitute Marital Property.* The first issue is determining whether a spouse's pension falls within the scope of "marital personal property." For nearly two decades the Family Courts in the Virgin Islands have followed the reasoning of a Territorial Court case which ultimately held that pension benefits are indeed marital personal property, subject to claim by the other spouse upon divorce.[9] *Fuentes I*, 38 V.I. at 31. After a thorough and comprehensive analysis of

---

[8] The Supreme Court of the Virgin Islands has not addressed whether pension funds constitute marital property within our jurisdiction. *Edney v. Edney*, 64 V.I. 661, 663 n.1 (V.I. 2016). The Supreme Court noted that *Fuentes I*, being a "decision of a single Superior Court judge," does not constitute "controlling authority in any subsequent proceeding." *Id.* Hence, no "technically binding case law."

[9] Several Virgin Islands trial courts have followed the reasoning in *Fuentes I* and regarded pensions as marital property. For example, *Allen v. Allen*, 118 F. Supp. 2d 653, 659 (D.V.I. 2000) ("A pension fund is marital personal property, subject to the claim by the other spouse upon divorce."); *Francis*, 61 V.I. at 23 ("Considering the tremendous statutory examples and case law from other jurisdictions holding pension funds as marital property, the Virgin Islands has determined that a pension fund is also marital personal property, subject to claim by the other spouse upon divorce."); *Lewit*, 52 V.I. at 123-24 ("The interpretation of V.I. CODE ANN. tit. 16, § 109 has been one of authorizing a divorce court to dispose of all the personal property of a marital estate according to the parties' circumstances. A pension fund is included as marital personal property. Thus, the divorce court may provide for the distribution of a pension fund in exercising its right to equitably divide marital property."). Even prior to *Fuentes I*, in *Hanley v. Hanley*, the Superior Court found that "the court would be empowered to partition a spouse's military pension pursuant to 16 V.I.C. § 109(4)," 26 V.I. 116, 116 (V.I. Terr. Ct. 1991) (citing *Morris*, 20 V.I. 249).

189

case law from other jurisdictions, the *Fuentes I* court came to the conclusion that in the Virgin Islands pensions are marital property. *Id.*

■ Although a 1997 pre-*Banks* case, the *Fuentes I* Court essentially engaged in an informal *Banks* analysis. In *Banks*, the Virgin Islands Supreme Court established a three prong test courts must consider when determining Virgin Islands common law: "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Banks v. International Rental and Leasing Corporation*, 55 V.I. 967, 979 (V.I. 2011).

Similar to a *Banks* analysis, the *Fuentes I* Court looked at case law from Rhode Island, New York, Colorado, Ohio, Wyoming, New Jersey, Pennsylvania, New Mexico, California, and decisions of the Third Federal Circuit. *Fuentes I*, 38 V.I. at 38-40. Those jurisdictions found that pension benefits represent "compensation for marital effort" and have been "equated to legally enforceable contracts." *Id.* at 38 (citation omitted). Pensions are logically assets in the form of benefits accrued during a marriage, and thus to the extent such benefit has accrued during the marriage it follows that it should be subject to equitable distribution.

■■ Given that neither the Supreme Court nor the Legislature has explicitly determined whether pensions are marital property, and, as elucidated in the *Fuentes I* analysis by looking at other jurisdictions' approaches, this Court is persuaded that the soundest rule for the Virgin Islands would be to follow the rule as decided in *Fuentes I* and find that pensions are marital property.[10]

---

[10] The Superior Court of the Virgin Islands possesses, in the absence of binding precedent, "concurrent authority with the Virgin Islands Supreme Court to shape Virgin Islands common law, and it need not even follow otherwise binding precedent that was predicated solely on the statute regarding the application of the common law." *Nature Conservancy, Inc. v. Louisenhoj Holdings, LLC*, S. Ct. Civ. No. ST-13-CV-124, 2014 V.I. LEXIS 42, at *1 (V.I. Super. Ct. Jul. 8, 2014) (citing 1 V.I.C. § 4). In *Banks* the Supreme Court found that there is no deprivation on the Supreme Court or the Superior Court of the ability to shape the common law through (currently repealed) title 1 section 4 of the Virgin Islands Code. In *Malloy*, the Court noted that because the Virgin Islands Legislature had not adopted a statute on the relevant issue, the Court addressed the issue solely as common law and excluded any cases relying on state statutes from review. *Malloy v. Reyes*, 61 V.I. 163, n.11 (V.I. 2014). The Court also noted that the second *Banks* factor requires courts to identify the rule "adopted by a

190

Having made that determination herein, it is important to note that in a recent opinion the Supreme Court noted that *Fuentes I*, being a "decision of a single Superior Court judge," does not constitute "controlling authority in any subsequent proceeding." *Edney*, 64 V.I. at 663 n.1. Nevertheless, this Court is persuaded by the reasoning in *Fuentes I*, and agrees that pension funds are indeed marital property.

When *Fuentes I* was decided, "marital property" had not been defined in the Virgin Islands Code. Since then, the Legislature amended the law. The statutory definition of marital property currently provides that "all real and personal property acquired by either spouse subsequent to the marriage except:" property the law specifically exempts. 16 V.I.C. § 109(a)(7). (None of the codified exceptions apply in this case.) That is, the statutory definition is silent on whether retirement or pension funds are considered marital property. Accordingly, the Court must turn to the common law to answer this question. *Accord Carlos Warehouse v. Thomas*, 64 V.I. 173, 183 (V.I. Super. Ct. App. Div. 2016) ("When statutes are silent, the common law governs." (Citing *Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013))). The Supreme Court of the Virgin Islands has not addressed whether pension funds constitute marital property within our jurisdiction. *Edney*, 64 V.I. at 663 n.1.

In light of the amount of time that has passed since the *Fuentes I* Court issued their opinion, this Court conducted an updated *Banks* analysis to determine whether considering pension and retirement benefits to constitute marital property is still the soundest rule for the Virgin Islands.

The first *Banks* factor favors finding that pensions and retirement benefits do constitute marital property, but only to the extent they were acquired subsequent to the marriage, as defined by our statute. As noted above, courts in this jurisdiction have followed the rationale of *Fuentes I*. *See, e.g., Allen*, 118 F. Supp. 2d at 659; *Francis*, 61 V.I. at 23; *Lewit*, 52 V.I. at 123-24.

With respect to the second *Banks* factor, *Fuentes I* addressed decisions in other jurisdictions with respect to treatment of retirement benefits in divorce actions and concluded "these jurisdictions are teeming with legal precedents, and accompanying judicial analysis, holding pension funds as

---

majority of *courts* of other jurisdictions," emphasizing the term "courts" to signal it is not a legislative inquiry.

marital property, to the extent acquired during marriage, entitling the non-employee spouse to an interest in the benefits." *Fuentes I*, 38 V.I. at 38. The majority of jurisdictions still consider pension or retirement benefits earned during the marriage to be marital property subject to division by the court in a divorce action.[11]

---

[11] *Conner v. Conner*, 68 P.3d 1232, 1235 (Alaska 2003); *Brebaugh v. Deane*, 211 Ariz. 95, 118 P.3d 43, 46 (2005); *Brown v. Brown*, 332 Ark. 235, 962 S.W.2d 810, 812 (1998); *In re Marriage of Brown*, 15 Cal. 3d 838, 126 Cal. Rptr. 633, 544 P.2d 561, 562-63 (1976); *In re Marriage of Casias*, 962 P.2d 999, 1001 (Colo. Ct. App. 1998); *Bender v. Bender*, 258 Conn. 733, 785 A.2d 197, 210 n.8, 211 (2001) (noting "our conclusion is also consistent with the majority of other appellate courts that have addressed the issue" citing cases from 31 jurisdictions); *Forrester v. Forrester*, 953 A.2d 175 (Del. 2008); *Barbour v. Barbour*, 464 A.2d 915 (D.C. 1983); *Frost v. Frost*, 299 Ga. 278, 787 S.E.2d 693, 694 (2016); *Maslen v. Maslen*, 121 Idaho 85, 822 P.2d 982 (1991); *In re Marriage of Wilson*, 449 N.W.2d 890, 892 (Iowa Ct. App. 1989); *Brown v. Brown*, 456 S.W.3d 823, 826 (Ky. Ct. App. 2015); *Skibinski v. Skibinski*, 2009 ME 13, 964 A.2d 641, 643 (2009); *Pulliam v. Pulliam*, 222 Md. App. 578, 114 A.3d 242, 246 (2015); *Doyle v. Doyle*, 55 So. 3d 1097, 1110 (Miss. Ct. App. 2010); *In re Marriage of Truax*, 271 Mont. 122, 894 P.2d 936, 938 (1995); *Gemma v. Gemma*, 105 Nev. 458, 778 P.2d 429 (1989); *Arnold v. Arnold*, 2003-NMCA 114, 134 N.M. 381, 77 P.3d 285, 288 (2003); *Majauskas v. Maiauskas*, 61 N.Y.2d 481, 485-86 (1984) (addressing vested pensions, not unvested); *Kraus v. Kraus*, 131 A.D.3d 94, 14 N.Y.S.3d 55, 59 (2015); *Mertz v. Mertz*, 2015 ND 13, 858 N.W.2d 292, 300 (2015); *Hoyt v. Hoyt*, 53 Ohio St. 3d 177, 559 N.E.2d 1292, 1294 (1990) (decision predates the Ohio statute that explicitly defined retirement benefits as marital property, *see* nn. 13 & 14, *infra*); *Ballinger v. Ballinger*, 2014 OK CIV APP 92, 340 P.3d 644, 651 (2014); *Marshall v. State Employees' Retirement System*, 887 A.2d 351, 357-58 (Pa. Commw. Ct. 2005); *Bober v. Bober*, 92 A.3d 152, 165 (R.I. 2014); *McMillan v. McMillan*, 417 S.C. 583, 790 S.E.2d 216, 223 (Ct. App. 2016); *Grode v. Grode*, 1996 SD 15, 543 N.W.2d 795, 802 (1996) ("A majority of jurisdictions have adopted the same rule as the *Brown* court, that all pensions, whether vested or nonvested, are marital property subject to distribution." (citations omitted)); *Gibson v. Gibson*, 437 N.W.2d 170, 171 (S.D. 1989); *Johnson v. Johnson*, 2014 UT 21, 330 P.3d 704, 715 (2014); *Gainer v. Gainer*, 219 W. Va. 654, 639 S.E.2d 746, 750 (2006); *Wyland v. Wyland*, 2006 WY 93, 138 P.3d 1165, 1167 (2006); *Broadhead v. Broadhead*, 737 P.2d 731, 734 (Wyo. 1987) ("A majority of jurisdictions have adopted the view that pensions and/or retirement funds, whether vested, nonvested, or not matured, are marital property divisible upon divorce." (citations omitted)); *see also* Charles C. Marvel, Annotation, *Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights between Spouses*, 94 A.L.R.3d 176, *8a (2016) ("There is overwhelming authority to the effect that vested and matured retirement or pension benefits, based on age and/or length of service and otherwise constituting community property insofar as was indicated by the time and nature of the services or contributions on which they were based are community property subject to award or to division between the spouses upon the dissolution of their marriage.") *But see* Charles C. Marvel, Annotation, *Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights between Spouses*, 94 A.L.R.3d 176 (2016) (in some jurisdictions the benefits

192

In addition, there are a number of states that explicitly define retirement or pension benefits as marital property via statute.[12] While case law from jurisdictions that rely on statutes to define pensions or retirement benefits as marital property is not applicable in a *Banks* analysis, *see Malloy*, 61 V.I. 163, cases decided prior to the enactment of a statute defining pension or retirement benefits as marital property are relevant.[13] There are also a number of jurisdictions with statutory definitions of marital property similar to 16 V.I.C. § 109(a)(7) that have found pension benefits acquired during marriage constitute marital property.[14]

■ The third factor in a *Banks* analysis requires the Court to determine the soundest rule for the Virgin Islands. *Inniss v. Inniss*, 65 V.I. 270, 280 (V.I. 2016). For almost twenty (20) years, *Fuentes I* has been in effect. The Court finds that this longevity and consideration in other cases and by litigants, coupled with the approach of the majority of jurisdictions, makes this determination the best rule for the Virgin Islands. Reaffirming that pension benefits acquired subsequent to marriage constitute marital property represents the soundest rule for the Virgin Islands. Based on Virgin Islands case law and the approach of the majority of other jurisdictions, the Court holds that pension or retirement benefits acquired by a spouse during a marriage constitute marital property.

Having found that pensions are marital property, the issue becomes narrower: whether Ms. Henley may receive a portion of Mr. Smith's government pension. Mr. Smith argued that the holding in *Fuentes I* was

---

must be vested to constitute marital property, although a number of these jurisdictions so dictate via statute).

[12] FLA. STAT. § 61.076(a) (2016); 750 ILL. COMP. STAT. § 5/503(b)(2) (2016) (effective until Jan. 1, 2017); IND. CODE § 31-9-2-98(b) (2016); 208 MASS. GEN. LAWS § 34 (2016); MICH. COMP. LAWS § 552.18 (2016); MINN. STAT. § 518.003(3)(b) (2016); MO. REV. STAT. § 104.312(1) (2016); NEB. REV. STAT. § 42-366(8) (2016); N.H. REV. STAT. ANN. § 458:16-a(I) (2016); N.C. GEN. STAT. § 50-20(b)(1) (2016); OHIO REV. CODE ANN. § 3105.171(3)(a)(i) (LexisNexis 2015); OR. REV. STAT. § 107.105(1)(f)(A) (2016); TENN. CODE ANN. § 36-4-121(b)(1)(B)(ii) (2016); VA. CODE ANN. § 20-107.3(A)(2) (2016).

[13] *James v. Faust*, 65 V.I. 349, 360 n.5 (V.I. 2016) ("This Court, however, limits its review of those authorities to those cases decided at common law before the enactment of child custody statutes, as well as to the common law in the remaining jurisdictions that have yet to adopt child custody statutes." (Citations omitted)).

[14] *See, e.g.*, COLO. REV. STAT. § 14-10-113(2) (2016); DEL. CODE ANN. tit. 13 § 1513(b) (2016); KY. REV. STAT. ANN. § 403.190(2) (LexisNexis 2016); S.C. CODE ANN. § 20-3-630(A) (2016).

"overturned" by the 2005 amendments to 3 V.I.C. § 725, which exempts a Virgin Islands government employee's pension benefits from being assignable in legal processes. The 2005 amendments changed the law to allow pension rights to be assignable where the annuity will be used for "support of a child, spouse, or other dependent." 3 V.I.C. § 725(b).

■ ■ Mr. Smith's argument fails as section 725 only applies to government pensions, and the 2005 amendment provides an explicit exemption for support of a child or spouse, thus rather than overturn *Fuentes I*, it could be read to have codified its holding that pensions (including government pensions) are marital property. However, *Fuentes I* did not address section 725 when it decided that government pensions were marital property even though the statute had been in place since 1959, long before the decision. However, the 2005 amendment carving out an exception for the support of dependents came after the *Fuentes I* decision, thus an argument could be made that the legislature was on notice of Virgin Islands common law and codified it via section (b). *See Haynes v. Ottley*, 61 V.I. 547, 564 (V.I. 2014) ("when a legislature adopts a statute, it does so with knowledge of existing law." (Citation omitted)).

■ As discussed above, under the canons of statutory construction, the plain meaning of a statute is controlling, absent any ambiguity. *In re Adoption of Sherman*, 49 V.I. 452, 456 (V.I. 2008) (finding the first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning). If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed. *Shoy v. People*, 55 V.I. 919, 926 (V.I. 2011) ("In interpreting a statute, we commence with the plain language of the statute. If the language is clear and unambiguous, there is no need to resort to any other rule or statutory construction"); *see also Brady v. Government of the Virgin Islands*, 57 V.I. 433, 441 (V.I. 2012). A statute's plain meaning can be overridden, however, by a showing of clear and contrary legislative intent. *Charles v. Charles*, 788 F.2d 960 (3d Cir. 1986). Per 1 V.I.C. § 42:

> Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language.... Technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to their peculiar and appropriate meaning.

194

The issue then becomes whether Ms. Henley's request for a portion of Mr. Smith's pension qualifies as "support" as defined in 3 V.I.C. § 725(b), even though she explicitly waived her request for alimony.

When a statute is subject to conflicting interpretations or the interpretation results in an illogical outcome, courts should ascertain and give effect to the intention of the legislative body, and select the rational and sensible construction. *In re Petition of Mejia*, 58 V.I. 139, 141 (V.I. Super. Ct. 2013). Here, the language of two statutes seems to conflict. On one hand, 16 V.I.C. § 109 has been construed to allow the distribution of pensions as marital property in a divorce action. On the other, 3 V.I.C. § 725, exempts all government pensions from "legal processes," except for the "support" of a spouse. In its attempt to find clarity as to what the legislature intended when it added the 2005 amendments to section 725, this Court obtained the legislative transcripts. However, there was no mention of the intent of the Legislature or the source of this amendment and one could not be discerned from the transcripts.[15]

It is also an established canon of statutory construction that all the "provisions upon a subject are to be harmonized and read together so as to effectuate the purposes of the statute, this is to be done in the light of the presumed desire and intent of the Legislature to enact a statute which is constitutional and otherwise valid." *Port Const. Co. v. Gov't of the V.I.*, 5 V.I. 549, 554 (3d Cir. 1966). To determine legislative intent, courts often read the statute as a whole, looking to the statutory language itself, the subject and purpose of the statute, and any available legislative history. *See Murrell v. People*, 54 V.I. 338, 347 (V.I. 2010) (holding courts must adhere to legislative intent when interpreting a statute); *In re Petition of Mejia*, 58 V.I. at 141.

In the absence of legislative history and guidance from the available legislative record, we look at the language of the statute itself. It is evident that the purpose of the GERS system is to "encourage qualified personnel to enter and remain in government service" by enabling "such employees to accumulate reserves for themselves, *their dependents*, and their beneficiaries." 3 V.I.C. § 701 (emphasis added). Courts thus must presume that when the legislature adopts a law, it

---

[15] S. Rep. No. 26-0071 at 29 (2005). The transcripts referenced are included via Order entered on even date as a Judicial Exhibit filed with this Opinion.

intended that the entire statute be effective. *Haynes*, 61 V.I. at 564 (citation omitted).

■■ ■■ In *Gov't of the V.I. ex rel Delerme v. Hodge*,[16] the District Court, sitting as the local trial court, stated that the first section of section 701 creates a "retirement and benefit system for officials and employees of the Government of the Virgin Islands *and for their dependents and beneficiaries*, for the payment of annuities, disability annuities, and other benefits as provided herein to said officials and employees, *and to their dependents and beneficiaries*, after stated periods of service and upon fulfillment of certain conditions as hereinafter set forth." 14 V.I. 438, 442 (D.V.I. 1977) (emphasis in opinion). The District Court noted the second section outlines the purpose of the system as being "to encourage qualified personnel to enter and remain in the service of the Government of the Virgin Islands by establishing an orderly means whereby those who become superannuated or otherwise incapacitated as the result of age or disability, may be retired from service without prejudice and without inflicting a hardship upon the employees retired, and to *enable such employees to accumulate reserves for themselves, their dependents, and their beneficiaries*, to provide for old age, death, disability and termination of employment, thus promoting economy and efficiency in the administration of government." *Id.* at 442-43 (emphasis in opinion). The District Court noted that those first two sections "evince a clear and indisputable intention on the part of the legislature to protect not only the pensioner, but his family and dependents as well . . . ." *Id.* at 442. The District Court found that the legislature did not intend to exempt the pension benefits of a pensioner from legal process issued to enforce or protect the rights of such pensioner's dependents or beneficiaries. *Id.* at 443.

This Court did not undertake a *Banks* analysis on the above issue addressing 3 V.I.C. § 725, because it is an issue of statutory interpretation rather than a determination of common law. *In re L.O.F.*, 62 V.I. 655, 661 n.6 (V.I. 2015). However, the Court notes that this outcome appears to be consistent with the approach of other jurisdictions. *See* Charles C. Marvel, Annotation, *Pension or Retirement Benefits as Subject to Award or*

---

[16] Although this case may not be binding precedent on this Court, *see, e.g., Hamed v. Hamed,* 63 V.I. 529, 535 (V.I. 2015), the Court finds the District Court's reasoning instructive on the issue of statutory interpretation rather than the common law.

*Division by Court in Settlement of Property Rights between Spouses*, 94 A.L.R.3d 176, *4e (2016) ("It has been held or recognized, under particular provisions regulating various state employees' retirement plans, that the fact that the particular benefit is exempt from process does not affect its status as property otherwise subject to division or award by the court in settlement of property rights between spouses.").

Having determined that pension or retirement benefits, to the extent they are acquired by one spouse subsequent to the marriage, are marital property, the next question is how to distribute such benefits in accordance with our statutory requirement that distribution of marital property be in accordance with equitable principles. The Court must determine both the timing of the distribution (either at the time of dissolution of the marriage or at the time of retirement) and the best method for effecting an equitable distribution.

Virgin Islands statutes and case law do not provide factors for this Court to consider for equitable division of marital property, other than factors to consider for distributing a marital homestead. *See Drayton*, 65 V.I. at 335. The Court notes that other jurisdictions have statutorily defined factors for courts to consider in equitable distributions.[17] Based on the lack of statutory and case law precedent on distribution of pensions as martial property, the Court will conduct a *Banks* analysis of the common law distribution methods for pension or retirement funds.

The first *Banks* factor requires looking to past Virgin Island precedent. Courts, outside of *Fuentes I* and *Fuentes v. Fuentes*, 41 V.I. 86 (V.I. Terr. Ct. 1999) (hereinafter *"Fuentes II"*), have not uniformly or explicitly applied the deferred distribution method.[18] *Fuentes I* outlined two generally accepted methods for equitable distribution of pension benefits:

---

[17] *See, e.g.*, COLO. REV. STAT. § 14-10-113 (2016); D.C. CODE § 16-910(b) (2016); IOWA CODE § 598.21(5) (2016); ME. REV. STAT. ANN. tit. 19, § 953(1) (2016); N.Y. DOM. REL. LAW § 236-B(5)(d) (2016); R.I. GEN. LAWS § 15-5-16.1 (2016); S.C. CODE ANN. § 20-3-620 (2016). The V.I. Supreme Court has adopted factors for a court to consider in equitable distribution of a marital homestead. *Drayton*, 65 V.I. at 340.

[18] In one case, the Court addressed pensions in the context of alimony, rather than dividing a pension fund as marital property. *Allen*, 118 F. Supp. 2d at 659. In another case, the Superior Court found that it lacked enough evidence to distribute the pensions and left each party with their own, roughly equal in amount, pension funds. *Francis*, 61 V.I. at 28-29. In yet another case, the parties stipulated through mediation to a 50/50 split of one of the party's pension, rather than the Court distributing the pension. *Lewit*, 52 V.I. at 121.

197

the "present value method" and the "deferred distribution method." 38 V.I. at 40-41. The *present value method* "presumes the designation of a present value on the retirement plan, as of the date of marital dissolution, through the use of an actuarial table to determine the life expectancy of the employee-spouse, by evaluating the circumstances on a case-by-case basis, and by considering the probability that the pension recipient will eventually exercise his or her rights under the retirement plan." *Id.* at 41. The *deferred distribution method* "calculates the non-employee spouse's interest in the pension fund to the extent acquired during the marriage and provide for its distribution on a percentage basis, along with incremental value, at the time the benefits become available to the employee spouse." *Id.* In a subsequent opinion the Court adopted a variant of the deferred distribution method known as the "reserved jurisdiction approach."[19] *Fuentes ii*, 41 V.I. at 91 n.5 (The reserved jurisdiction approach does not determine the non-employee spouse's percentage interest in the pension at the time of the divorce, but reserves jurisdiction for the Court to establish the percentage at the time of retirement). *Fuentes II* also specifically noted its earlier decision had "concluded that the deferred distribution method was best suited to the factual circumstances of this case." *Id.* at 91.

The second *Banks* factor involves the Court reviewing the methods for distribution of pension or retirement benefits used in other jurisdictions. Many jurisdictions, similar to the Court in *Fuentes I*, outline the differences between pension valuation methods in the context of distributing pension or retirement benefits as marital property.[20]

---

[19] Some cases describe the reserved jurisdiction method as a third, distinct approach. *See, e.g., In re Marriage of Hunt*, 909 P.2d 525, 539-40 (Colo. 1995); *Bender v. Bender*, 258 Conn. 733, 785 A.2d 197, 213 (2001).

[20] *Hartley v. Hartley*, 205 P.3d 342, 348 (Alaska 2009) (the "immediate offset method" and the "deferred distribution method"); *Hetherington v. Hetherington*, 220 Ariz. 16, 202 P.3d 481, 484 (2008) (the present-cash-value method and the reserved-jurisdiction method); *In re Marriage of Brown*, 15 Cal. 3d 838, 126 Cal. Rptr. 633, 544 P.2d 561, 567 (1976); *In re Marriage of Hunt*, 909 P.2d 525, 539-40 (Colo. 1995) (describing reserved jurisdiction as a third method, distinct from the present value and deferred distribution methods); *Jerry L.C. v. Lucille H.C.*, 448 A.2d 223, 225 (Del. 1982); *Thomas v. Thomas*, 776 So. 2d 1092, 1095 (Fla. Dist. Ct. App. 2001); *Stouffer v. Stouffer*, 10 Haw. App. 267, 867 P.2d 226, 231 (1994); *In re Marriage of Culp*, 399 Ill. App. 3d 542, 936 N.E.2d 1040, 1045, 344 Ill. Dec. 283 (2010); *In re Marriage of Harrison*, 13 Kan. App. 2d 313, 769 P.2d 678 (1989); *Armstrong v. Armstrong*, 34 S.W.3d 83, 85 (Ky. Ct. App. 2000) (same as *In re Marriage of Hunt*); *Dewan v. Dewan*,

The majority of jurisdictions have some form of both the present value and deferred distribution methods, although there are variations in terminology and slight variations in definitions between jurisdictions. *See* note 20 and accompanying text. Courts utilize a present value, sometimes called an immediate offset method, when valuing and distributing the marital portion of pension funds at the time of the divorce decree. *Id.* Some courts use the deferred jurisdiction or reserve jurisdiction method, where the court retains jurisdiction over distribution of the pension benefits until such a time as the pension matures and the employee spouse begins receiving benefits. Some jurisdictions determine the percentage of pension or retirement benefits to be awarded to the non-employee spouse via the deferred distribution method at the time of the dissolution of the marriage.[21] Jurisdictions that utilize the deferred distribution method tend

---

17 Mass. App. Ct. 97, 455 N.E.2d 1236, 1239-40 (1983); *Boyd v. Boyd*, 116 Mich. App. 774, 323 N.W.2d 553, 557 (1982); *Momsen v. Momsen*, 143 P.3d 450, 455 (Mont. 2006) (two methods: (1) the present value method (lump sum distribution) and (2) the time rule method (deferred distribution)); *Janssen v. Janssen*, 331 N.W.2d 752, 756 (Minn. 1983); *Gemma v. Gemma*, 105 Nev. 458, 778 P.2d 429, 431 (1989); *Ruggles v. Ruggles*, 1993-NMSC-081, 116 N.M. 52, 54-55, 860 P.2d 182 (1993) (preferred method is "lump sum" or other equivalent distribution to nonemployee spouse in circumstances of this particular case, but in other circumstances where not possible or practical to achieve this preferred distribution method, other methods can be utilized, such as the "pay as it comes in" or "reserved jurisdiction" options); *Glass v. Glass*, 344 N.W.2d 677 (N.D. 1984); *Hoyt v. Hoyt*, 53 Ohio St. 3d 177, 559 N.E.2d 1292, 1297 (1990); *Pulliam v. Pulliam*, 796 P.2d 623, 625-26 (Okla. 1990) (present value method or deferred distribution method); *Braderman v. Braderman*, 339 Pa. Super. 185, 488 A.2d 613, 619 (1985) (two methods: the immediate offset method and the deferred distribution or reserved jurisdiction method, although these methods were later codified by statute in 23 PA. CONS. STAT. § 3501(c) (2016) as outlined in *Smith v. Smith*, 595 Pa. 80, 938 A.2d 246, 247 (2007)); *Martin v. Martin*, 296 S.C. 436, 373 S.E.2d 706, 709 n.2 (1988) (present cash value method and reserve jurisdiction method); *Granger v. Granger*, 2016 UT App 117, 374 P.3d 1043 (2016); *In re Wright*, 147 Wn.2d 184, 52 P.3d 512, 515 (2002) (lump sum method determining present value of pension or pay as it comes in method, where benefits are valued and divided as they are received); *Chenault v. Chenault*, 224 W. Va. 141, 680 S.E.2d 386, 390 (2008) (outlining a preferential order of methods: (1) lump sum payment through cash settlement or offset from other marital assets, (2) payment over time of present value of pension rights at time of divorce, and (3) court order requiring share in benefits on proportional basis when and if they mature).

[21] *See, e.g., Bender v. Bender*, 258 Conn. 733, 785 A.2d 197, 213 (2001) (outlining three general approaches but expressly rejecting the reserved jurisdiction method); *In re Marriage of Sullins*, 715 N.W.2d 242, 248 (Iowa 2006); *Imagnu v. Wodajo*, 85 Md. App. 208, 582 A.2d 590 (1990); *Webster v. Webster*, 271 Neb. 788, 716 N.W.2d 47, 52 (2006); *Stiel v. Stiel*, 348 S.W.3d 879, 885-86 (Tenn. Ct. App. 2011); *Brockway v. Brockway*, 921 P.2d 1104 (Wyo. 1996).

to do so where they are unable to ascertain the present value of the pension benefits or there are insufficient assets to accommodate an immediate distribution. *See, e.g., id.*

Many cases in a variety of jurisdictions do not use a hard and fast rule with respect to which distribution method must be used in all cases, but instead emphasize the distribution of marital assets as within the discretion of the trial court.[22] These jurisdictions' emphasis in the

---

[22] *Hartley v. Hartley*, 205 P.3d 342, 352 (Alaska 2009) ("We have consistently recognized that the superior court is in the best position to assess each party's circumstances and to determine what division of property is most equitable."); *In re Marriage of Brown*, 15 Cal. 3d 838, 126 Cal. Rptr. 633, 544 P.2d 561, 567 (1976); *In re Marriage of Hunt*, 909 P.2d 525, 538 (Colo. 1995) ("The method adopted may vary with the facts in each case." (citations omitted)); *Bender v. Bender*, 258 Conn. 733, 785 A.2d 197, 216 (2001) (holding it is within the trial court's discretion to choose, on a case-by-case basis, the method, although expressly rejecting the reserved jurisdiction method); *Forrester v. Forrester*, 953 A.2d 175, 186 (Del. 2008) ("The Family Court has 'broad discretion' in dividing marital property, in general, and pension plan benefits, in particular."); *Taylor v. Taylor*, 283 Ga. 63, 656 S.E.2d 828, 829 (2008) ("The trial court has a broad discretion to make an equitable division of retirement accounts upon consideration of all the relevant evidence." (citation omitted)); *Maslen v. Maslen*, 121 Idaho 85, 822 P.2d 982, 988 (1991) ("[W]e decline to state a single inflexible rule for calculating the community interest or value of retirement plans." (citation omitted)); *In re Marriage of Wilson*, 449 N.W.2d 890, 892-93 (Iowa Ct. App. 1989) (court found division of pension benefits equitable where division not ordered until actual retirement, but percentage to be payable pre-determined); *Armstrong v. Armstrong*, 34 S.W.3d 83, 87 (Ky. Ct. App. 2000) (while recognizing the merits of other jurisdictions' adoption of the "time rule" formula, court finds "a trial court retains broad discretion in valuing pension rights and dividing them between parties in a divorce proceeding..."); *Skibinski v. Skibinski*, 2009 ME 13, 964 A.2d 641, 643 (2009) (not an abuse of discretion to award employee spouse the entire value of the pension with a smaller percentage of value of the house); *Robinette v. Hunsecker*, 439 Md. 243, 96 A.3d 94, 95 n.1 (2014) (trial court has broad discretion in the manner of distributing pension benefits); *Doyle v. Doyle*, 55 So. 3d 1097, 1110 (Miss. Ct. App. 2010) (court has authority and discretion "where the equities so suggest, to order a fair division of property"); *In re Marriage of Swanson*, 2004 MT 124, 321 Mont. 250, 90 P.3d 418, 423 (2004) ("[A] district court is granted substantial discretion to devise a method to accomplish an equitable distribution." (citation omitted)); *Ruggles v. Ruggles*, 1993-NMSC-081, 116 N.M. 52, 54-55, 860 P.2d 182 (1993) (court should use as first priority the "lump sum" or other equivalent distribution to nonemployee spouse in circumstances of this particular case, but in other circumstances where not possible or practical to achieve this preferred distribution method, other methods can be utilized, such as the "pay as it comes in" or "reserved jurisdiction" options); *Murphy v. Murphy*, 125 A.D.3d 1265, 4 N.Y.S.3d 661 (2015) ("The trial court has substantial discretion in fashioning an award of equitable distribution." (citation omitted)); *Majauskas v. Majauskas*, 61 N.Y.2d 481, 485-86, 463 N.E.2d 15, 474 N.Y.S.2d 699 (1984) (court may order distribution of the equitable portion of the present value of pension rights earned during marriage or may provide that upon maturity of the pension rights the recipient pay a portion of each payment received to his or her former

distribution method being left to the discretion of the trial court, based on the factual circumstances of each individual case, is similar to the Court's statement in *Fuentes II* that the deferred distribution method, and specifically the reserved jurisdiction method, was "best suited to the factual circumstances of *this* case." 41 V.I. at 91 (emphasis added).

█ The final, and most important, *Banks* factor requires the Court determine the soundest rule for the Virgin Islands. The Court finds that a case-by-case determination of which method to utilize for distribution of pension benefits acquired during the marriage is the soundest rule for the

---

spouse); *Hoyt v. Hoyt*, 53 Ohio St. 3d 177, 559 N.E.2d 1292 (1990) ("When considering pension or retirement benefits, a trial court must be given discretion. This court has consistently held that flat rules have no place in determining a property division." (citations omitted)); *Pulliam v. Pulliam*, 796 P.2d 623, 625-26 (Okla. 1990) (the present value method is preferable where pension valuation is not unduly speculative, but allowing the trial court discretion in determining which method to use) *but see Thompson v. Thompson*, 2005 OK CIV APP 2, 105 P.3d 346, 351 (2004) (the deferred distribution method is preferable where the present value is speculative); *Braderman v. Braderman*, 339 Pa. Super. 185, 488 A.2d 613, 620 (1985) (court declines to establish method for distribution for use in every case) *but see* 23 PA. CONS. STAT. § 3501(c) (2016) (codifying the formulas for a court to use to distribute marital portions of retirement plans depending on whether the court chooses to distribute via the deferred distribution method or the immediate offset method); *Hagopian v. Hagopian*, 916 A.2d 761, 763 (R.I. 2007) ("There is no single prescribed method of pension distribution in this circumstance. Rather, the decision about which method is most appropriate involves an exercise of discretion by the trial justice in consideration of the unique circumstances of each case."); *Martin v. Martin*, 296 S.C. 436, 373 S.E.2d 706, 709 (Ct. App. 1988) (no set rule in area of equitable distribution of marital property; each case must be analyzed on its own facts); *Huffaker v. Huffaker*, 2012 SD 81, 823 N.W.2d 787, 792 (2012) (case law established factors for court to consider in distributing marital property "while having due regard for equity and the circumstances of the parties" (citations omitted)); *Johnson v. Johnson*, 2014 UT 21, 330 P.3d 704, 716 (2014) ("[T]he district court is not bound by a specific prescribed approach in determining the most equitable distribution of pension benefits following the dissolution of a marriage, but should evaluate all relevant factors and circumstances in making such a determination."); *Cross v. Cross*, 185 W. Va. 414, 407 S.E.2d 720, 724 (1991) (Court concludes a lump-sum payment is not the most favored method of equitable distribution, but does not conclude the court erred); *Cross v. Cross*, 178 W. Va. 563, 363 S.E.2d 449, 455 (1987) ("Many state courts have wrestled with the pension issue, particularly in the community property states, and they have all concluded that the problem is sufficiently intractable and complex as to defy any hard and fast rules."); *Gainer v. Gainer*, 219 W. Va. 654, 639 S.E.2d 746, 752 (2006) ("[T]rial courts must be provided with discretion regarding the method of distribution most appropriate in any given set of factual circumstances." (citation omitted)); *Blanchard v. Blanchard*, 770 P.2d 227, 229 (Wyo. 1989) ("The district court has great discretion in making a division of marital property; a just and equitable division is as likely as not to be unequal; there are no standardized rules which govern property division. . . ." (citation omitted)).

█

Virgin Islands. The Court finds that this comports with the statutory requirement that property distribution follow "principles of equitable distribution." 16 V.I.C. § 109(a)(7). The distribution method that may be equitable in one case may not be equitable in another case.

The "*Fuentes* formula," as it is commonly known in this jurisdiction, is also described as the "time rule" formula that was outlined by the *Fuentes II* Court. The "time rule" formula in *Fuentes II* addressed distribution of pension benefits that accumulated after the parties' divorce but prior to the husband receiving his pension annuity. In *Fuentes II*, the husband retired more than two years after the parties' divorce, so the Court was tasked with determining "whether any post-divorce enhancements to the pension plan should be included in this equation." 41 V.I. at 96. The *Fuentes II* Court evaluated two methods, the "bright line" rule and the "time rule" formula for addressing distribution of post-dissolution pension enhancements. *Id.* at 97. The time rule formula is often discussed in the context of addressing post-dissolution enhancements in the pension. *See, e.g., Fuentes II, Brower v. Brower,* 61 Mass. App. Ct. 216, 808 N.E.2d 836 (2004).

Most jurisdictions have some version of the "*Fuentes* formula," also known as a formula that establishes the marital portion of the employee spouse's pension, where the number of years (or months, if more accurate) of the marriage is the numerator and the number of years (or months) the employee spouse accrued pension benefits is the denominator. The marital portion fraction is then multiplied by the monthly payment and then typically multiplied by ½ to represent the non-employee spouse's share. *See, e.g., Fuentes II,* 41 V.I. at 99. Jurisdictions that have approved the use of the "time rule" formula are numerous, although they do not all use the same terminology when describing the formula.[23]

---

[23] *Jackson v. Jackson,* 656 So. 2d 875 (Ala. Civ. App. 1995); *Tillmon v. Tillmon,* 189 P.3d 1022 (Alaska 2008); *Brown v. Brown,* 332 Ark. 235, 962 S.W.2d 810, 812 (1998); *In re Marriage of Judd,* 68 Cal. App. 3d 515, 137 Cal. Rptr. 318, 321 (1977); *In re Marriage of Hunt,* 909 P.2d 525 (Colo. 1995) ("The 'time rule' formula has been approved by a number of jurisdictions." (citing *Cooper v. Cooper,* 167 Ariz. 482, 808 P.2d 1234, 1242 (1990)); *In re Marriage of Freiberg,* 57 Cal. App. 3d 304, 127 Cal. Rptr. 792, 796 (1976); *Stouffer v. Stouffer,* 10 Haw. App. 267, 867 P.2d 226, 231 (1994); *Warner v. Warner,* 651 So. 2d 1339, 1340 (La. 1995); *Lynch v. Lynch,* 665 S.W.2d 20, 23-24 (Mo. Ct. App. 1983); *Rolfe v. Rolfe,* 234 Mont. 294, 766 P.2d 223, 226 (1988); *Gemma v. Gemma,* 105 Nev. 458, 778 P.2d 429,

The fraction of the number of years of the marriage over the number of years the pension accrued is known as the "coverature fraction" in a number of jurisdictions.[24] It is often used in the context of the "time rule" formula, but not always.[25] Other cases utilize a deferred distribution method that determines, at the time of the marital dissolution, a percentage share of the pension benefits that the non-employee spouse will begin receiving when the pension benefits mature.[26] Other cases emphasize that there is no specific formula that a court must follow in dividing the marital portion of pension benefits. *See, e.g., Casey v. Casey*, 82 Conn. App. 378, 844 A.2d 250, 256 (2004) (citations omitted); *McGee v. McGee*, 214 W. Va. 36, 585 S.E.2d 36, 45 (2003). There are also some jurisdictions that require the marital portion of the pension benefits

---

431 (1989); *Berry v. Meadows*, 1986-NMCA-002, 103 N.M. 761, 713 P.2d 1017, 1023 (1986); *Welder v. Welder*, 520 N.W.2d 813, 817 (N.D. 1994); *Woodward v. Woodward*, 656 P.2d 431, 433-34 (Utah 1982)); *Forrester v. Forrester*, 953 A.2d 175, 186 n.46 (Del. 2008); *Baruch v. Clark*, 154 Idaho 732, 302 P.3d 357, 363 n.10 (2013); *In re Marriage of Sullins*, 715 N.W.2d 242, 249 (Iowa 2006) (describing the time rule formula but calling it the percentage method); *In re Marriage of Strahley*, 830 P.2d 75 (Kan. Ct. App. 1992); *Snodgrass v. Snodgrass*, 297 S.W.3d 878 (Ky. Ct. App. 2009); *Allen v. Allen*, 941 So. 2d 62 (La. Ct. App. 2006); *Brower v. Brower*, 61 Mass. App. Ct. 216, 808 N.E.2d 836 (2004); *Janssen v. Janssen*, 331 N.W.2d 752 (Minn. 1983); *In re Taber-McCarthy & McCarthy*, 160 N.H. 112, 993 A.2d 240, 246 (2010); *Cohen v. Cohen*, 937 S.W.2d 823 (Tenn. 1996); *Johnson v. Johnson*, 2014 UT 21, 330 P.3d 704 (2014); *McGee v. McGee*, 214 W. Va. 36, 585 S.E.2d 36 (2003); *Glover v. Crayk*, 2005 WY 143, 122 P.3d 955 (2005).

[24] *Horton v. Horton*, 62 So. 3d 689, 691 (Fla. Dist. Ct. App. 2011); *Barton v. Barton*, 47 N.E.3d 368, 379-80 (Ind. Ct. App. 2015); *Vander Veen v. Vander Veen*, 229 Mich. App. 108, 580 N.W.2d 924 (1998); *Braderman v. Braderman*, 339 Pa. Super. 185, 488 A.2d 613 (1985).

[25] Some jurisdictions determine the community share of the pension using this fraction when utilizing the "present value" method of pension distribution, where the Court splits the present value of the pension in a lump sum distribution. *See, e.g., Laing v. Laing*, 741 P.2d 649, 656-57 (Alaska 1987); *Hetherington v. Hetherington*, 220 Ariz. 16, 202 P.3d 481, 484-85 (2008); *In re Marriage of Richardson & Richardson*, 307 Ore. 370, 769 P.2d 179, 184-85 (1989). Other cases seem to multiply the marital portion fraction by the monthly payments. *See, e.g., In re Marriage of Culp*, 399 Ill. App. 3d 542, 936 N.E.2d 1040, 1045, 344 Ill. Dec. 283 (2010); *In re Marriage of Greene*, 97 Wn. App. 708, 986 P.2d 144, 146-47 (1999) (citations omitted).

[26] *See, e.g., Bender v. Bender*, 258 Conn. 733, 785 A.2d 197, 215 (2001); *In re Marriage of Sullins*, 715 NW.2d 242, 248 (Iowa 2006); *In re Marriage of Harrison*, 13 Kan. App. 2d 313, 769 P.2d 678 (1989); *Imagnu v. Wodajo*, 85 Md. App. 208, 582 A.2d 590 (1990); *Taylor v. Taylor*, 329 N.W.2d 795, 798-99 (Minn. 1983); *Webster v. Webster*, 271 Neb. 788, 716 N.W.2d 47, 52 (2006); *Stiel v. Stiel*, 348 S.W.3d 879, 885-86 (Tenn. Ct. App. 2011); *Brockway v. Brockway*, 921 P.2d 1104 (Wyo. 1996).

be split equally, as codified by statute, although most have provisions to allow for equitable distribution where an equal division would not be equitable. *See, e.g., Wilson v. Wilson*, 2016 Ark. App. 256, 492 S.W.3d 534 (2016); *In re Marriage of Gillmore*, 29 Cal. 3d 418, 174 Cal. Rptr. 493, 629 P.2d 1, 3-4 (1981) (citations omitted); *Gilliard v. Gilliard*, 162 So. 3d 1147 (Fla. Dist. Ct. App. 2015); *Maslen v. Maslen*, 121 Idaho 85, 822 P.2d 982, 985 (1991); *Gemma v. Gemma*, 105 Nev. 458, 778 P.2d 429 (1989); *Cardona & Cardona*, 262 Ore. App. 415, 325 P.3d 66, 68 (2014). Division methods that are codified by statute are not applicable to this Court in a *Banks* analysis of the common law. *See Malloy*, 61 V.I. 163, *James v. Faust*, 65 V.I. at 360 n.5. Although the jurisdictions listed above dictate equal division by statute, the only jurisdiction that provides guidance in the actual distribution of pension or retirement benefits as marital property by statute is Pennsylvania. *See* 23 PA. CONS. STAT. § 3501(c) (2016).

This Court is guided by our statutory mandate of equitable distribution of marital property in the context of a divorce action. The Court lacks specific statutory instruction and binding case law authority on how to equitably distribute retirement benefits as marital property. *See* note 8, *supra*, and accompanying text. Therefore, the Court engaged in a *Banks* analysis and found that the majority of jurisdictions do not apply a hard and fast rule with respect to one specific formula for distribution of pension benefits, but rather look to the specific factors and circumstances of each case. *See* note 23, *supra*, and accompanying text. The Court reviewed jurisdictions that apply a deferred distribution method and finds a variation of the "time rule" formula to be the most equitable method of distribution for the facts of this case.

## DISCUSSION

*Raphune Hill property.*

 The Court finds from the parties' testimony that Mr. Smith assumed most of the expenses associated with Qadry Smith's education and support, and Ms. Henley assumed most of the expenses for the support of Deja Smith. The Court had the opportunity to observe the witnesses and their testimony and made credibility determinations with respect to the parties' assertions and disputes. Although Mr. Smith funded the down payment on the home, and is currently making the payments on

the outstanding mortgage, the Court finds that Ms. Henley significantly contributed to other shared expenses, like Deja's education. Ms. Henley also claimed she deposited monthly payments directly to Mr. Smith's personal account, as a contribution to the mortgage payments. Furthermore, if not for Ms. Henley's credit, the parties would not have been able to qualify for the necessary mortgage. Thus, through the marriage the parties acted as a team and although through different means each made significant contributions, for example splitting up expenses by each party funding one child apiece, which allowed them to purchase the Raphune Hill property.

This Court finds that each party is entitled to a fifty (50) percent share in the Estate Raphune Hill property to be distributed once the property is sold. Mr. Smith shall be responsible for all property taxes, insurance and maintenance expenses from the date of the parties' divorce (March 9, 2016) until the property is sold. The 50/50 split shall be calculated after Mr. Smith is reimbursed for one-half of what he paid for property taxes and house insurance costs from the date of the parties' divorce (March 9, 2016) until the property is sold.

The parties shall also retain an option to buy-out the other's share of the property. Such option shall be exercised within six (6) months of the date of this Order. Should both parties wish to buy each other out and reach an impasse, or should neither party wish to exercise the buyout option, the property shall be put on the market and sold at fair market value once the six (6) month period lapses. The proceeds shall be split 50/50, after Mr. Smith is reimbursed for one-half of what he paid for property taxes and house insurance costs from the date of the parties' divorce (March 9, 2016) until the property is sold.

### Personal property.

Mr. Smith testified he has four boxes containing Ms. Henley's personal property in his possession. Mr. Smith testified he is willing to make the property available to Ms. Henley immediately. It is undisputed that some of Ms. Henley's items in Mr. Smith's possession were disposed of and therefore, cannot be recovered.

██ This Court is unpersuaded by the evidence Ms. Henley submitted, showing pictures of jewelry from a catalogue, and testimony regarding a consultation with a jeweller claiming her lost jewelry cost an estimated ten thousand dollars ($10,000.00). Ms. Henley testified that she arrived at

her description of the lost jewelry and the replacement cost by looking at pictures from a jeweller's book and having the jeweller mark the price on the pages. The Court applies the preponderance of the evidence standard, as applied in civil matters via 5 V.I.C. § 740(5), and finds that Ms. Henley has not met that evidentiary burden here. Ms. Henley's testimony and submitted evidence did not satisfy the Court of either the actual value of the specific jewelry items that were missing or that Mr. Smith is fully responsible for the loss of any jewelry that is missing. Mr. Smith shall turn over to Ms. Henley any of her personal property currently in his possession, as authorized by 16 V.I.C. § 109(a)(4).[27] The request for a money judgement totalling ten thousand dollars ($10,000.00) is denied.

*Pension proceeds.*

■ ■ While determining that pensions are marital property and taking into account the established intent of the GERS system, this Court finds that Ms. Henley is entitled to a portion of Mr. Smith's pension as her share of the marital property. Ms. Henley's waiver of her request for alimony does not bar such entitlement. Ms. Henley is therefore entitled to equitable distribution of such property that was acquired and accrued during the parties' marriage. Ms. Henley's request for a portion of Mr. Smith's pension benefits is granted, while finding that pensions are marital property, and that a spouse need not phrase a claim upon the scope of alimony in order to reach it. Mr. Smith shall cooperate as necessary with GERS to engage in a qualified domestic relations order (QDRO).

This case does not involve a traditional deferred distribution method where a court postpones distribution of the marital share of the retirement benefits until the employee spouse retires and begins receiving pension benefits. Due to the fact that Mr. Smith's retirement was effective prior to the party's divorce, the Court does not need to determine how to distribute post-divorce enhancement of retirement funds. Mr. Smith is currently receiving and has been receiving retirement benefits since before the parties' divorce.

---

[27] Ms. Henley cites 16 V.I.C. § 109(a)(4): "Whenever a marriage is declared void or dissolved the Court may without regard to any determination that the breakdown of the marriage was the fault of one party or the other, further decree (4) for the delivery to the wife of her personal property in the possession or control of the husband at the time of giving the judgment."

However, the fact that the distribution of the pension is not deferred does not relieve this Court of our statutory requirement to equitably divide marital property in a marital dissolution. As outlined in the above *Banks* analysis, the Court could utilize a present value method or a deferred distribution method in distributing marital portions of pension benefits. Here, the Court is unable to utilize the present value method for a number of reasons.

██ ██ First, the parties have not presented evidence for the Court to make a determination of Mr. Smith's pension's actual present value. The Court heard testimony on Mr. Smith's total contributions to the fund, but that does not address the full actuarial value of the pension. The Court was also not presented with information as to the amount of contributions that accrued during the parties' marriage. Testimony established that a portion of Mr. Smith's pension accrued prior to his marriage. Ms. Sasso of GERS testified as to Mr. Smith's total contribution at the time of retirement. However, the Court is unable to determine if this is the actual present value of the pension fund, based on a lack of evidence on the explicit "present value" of the pension. Traditionally, a "present value" determination of pension benefits requires expert testimony with actuarial information, such as life expectancy, presented. *See, e.g., Bender v. Bender*, 258 Conn. 733, 785 A.2d 197, 214 (2001); *In re Marriage of Harrison*, 13 Kan. App. 2d 313, 769 P.2d 678, 680 (1989); *Imagnu v. Wodajo*, 85 Md. App. 208, 582 A.2d 590, 592 (1990). Since the Court does not have the present value of the pension fund, the Court finds the deferred distribution method to be the most equitable method of distributing pension benefits acquired during the marriage for this particular case.

Secondly, the Court finds that the evidence fits better into the deferred jurisdiction model; that is, the Court heard testimony on the amount of pension annuity that Mr. Smith receives each month, and the total number of years he accrued his pension fund. The Court also heard testimony on the length of the party's marriage. The Court did not hear actuarial testimony with respect to life expectancy and other variables that would allow the Court to make a finding of the pension's present value. The evidence presented by the parties allows the Court to apply the "time rule" formula to determine the portion of Mr. Smith's pension that is the marital portion, and therefore which percentage is an equitable distribution to Ms. Henley.

Under the facts and circumstances of this particular case, the Court finds that a 50% portion of Mr. Smith's retirement benefits that were acquired during the parties' marriage, as calculated by a strict application of the "time rule" formula outlined in *Fuentes II*, would not be an equitable distribution. This Court does not have specific guidelines or factors to consider in determining what constitutes an equitable distribution of marital property.[28]

The Court is also cognizant of our statutory guidance that "[w]henever a marriage is declared void or dissolved the court may, without regard to any determination that the breakdown of the marriage was the fault of one party or the other, further decree: . . . for the award to the parties of all marital property, in accordance with principles of equitable distribution." 16 V.I.C. § 109(a)(7).

 The Court is mindful that the doctrine of equitable distribution does not necessarily mean equal, but equitable. *Fuentes I*, 38 V.I. at 40. *See also Henderson v. Henderson*, 800 So. 2d 595, 597 (Ala. Civ. App. 2000) ("[A] division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court."); *Black v. Black*, 292 Ga. 691, 740 S.E.2d 613, 618 (2013) ("As we have explained before, '[a]n equitable division of marital property does not necessarily mean an equal division, and an award is not erroneous simply because one party receives a seemingly greater share of the marital property.' " (citation omitted)); *Brabham v. Brabham*, 950 So. 2d 1098, 1100 (Miss. Ct. App. 2007) ("[E]quitable distribution does not mean equal distribution." (citation omitted)).

 The Court, taking into consideration the full financial situation of the parties, as elicited by the testimony and evidence presented at trial, will apportion Mr. Smith's pension benefits based on the following findings.

Ms. Henley is requesting 50% of Mr. Smith's pension benefits. Ms. Henley has a pension through Girl Scouts of America that Mr. Smith is not seeking to have distributed. Ms. Henley testified her pension is $22,000 and she would be eligible to receive that pension at age

---

[28] The Supreme Court has provided factors for a court to consider for equitable distribution of a marital homestead. *See Drayton*, 65 V.I. at 340.

sixty-five. (Ms. Henley's Exhibit 2 states that the benefit is currently worth $22,333.81.) At the time of trial, she was fifty-one (51) and still employed, making $35,000 per year, although she had previously been making $50,000 per year. The Court considers Ms. Henley's pension relevant to the extent it could also be marital property and finds that it bears on the Court's balancing of the equities of this case in distributing the marital portion of Mr. Smith's pension.[29] Ms. Henley herself acknowledged the impact that her own pension would have on the distribution of Mr. Smith's pension in this case. "Respondent understands that Respondent's Girl Scout pension will have to be offset when determining the percentage that Respondent should receive from Petitioner's pension." Mot. For Telephonic Conference at page 3, #14 (Sep. 16, 2015).

However, Mr. Smith is not seeking any portion of Ms. Henley's retirement benefits. Therefore, this Court need not distribute Ms. Henley's pension as marital property where Mr. Smith has made it clear that he is not interested in its distribution.

 Mr. Smith retired on December 31, 2014 and began receiving twice monthly pension payments in mid-April of 2015. Mr. Smith's pension is through GERS, which is, by statute, considered a "defined benefit plan." *See* 3 V.I.C. § 706. A defined benefit plan allows Mr. Smith "to receive retirement benefits in the form of semi-monthly installments from GERS for the remainder of his life." *Fuentes II*, 41 V.I. at 90 (citation omitted); *see also Hartley v. Hartley*, 205 P.3d 342, 347 (Alaska 2009) (A defined benefit plan is "one where the employee, upon retirement, is entitled to a fixed periodic payment.").

 Ms. Sasso testified that there is a deduction taken from Mr. Smith's check to pay back a loan. Mr. Smith's undisputed testimony is that the loan was to pay for a loan owing on the marital home and the parties' son's educational and living expenses. The parties testified, although the testimony was somewhat conflicting, with respect to their individual payments towards their children's educational expenses, involving tuition and living expenses. Mr. Smith testified that he incurred debt to pay for his son's schooling. Ms. Henley testified that she incurred

---

[29] Respondent's Exhibit 2 indicates Ms. Henley's employment termination date with the Girl Scouts of America was in 1995, which means that at least some, if not all, of the accrued pension funds are marital property.

debt to pay for their daughter's tuition. While Mr. Smith testified that he paid for a portion of their daughter's college expenses, Ms. Henley disputed the testimony that Mr. Smith contributed to their daughter's tuition. Mr. Smith disputed the testimony that Ms. Henley paid for their daughter's tuition. The Court finds, after weighing the testimony and credibility of the witnesses, that both parties incurred debt for their children's educational endeavors and apportioned the expenses between themselves as they saw fit during their marriage.[30]

The Court will distribute Mr. Smith's pension benefit, only to the extent it was acquired subsequent to the marriage, as follows. The marital portion is determined to be the years of service during the marriage divided by Mr. Smith's total years of government service. This marital portion fraction is to be multiplied by the net amount Mr. Smith receives with each check, which takes into account the loan deduction.

Applying a strict "time rule" formula in this case would multiply that amount by ½ or 50% to determine Ms. Henley's portion. However, based on the totality of the parties' circumstances and the court's mandate to use principles of equitable distribution in dividing marital property, the Court declines to award Ms. Henley a 50% portion of Mr. Smith's benefits accrued during the marriage. The Court finds a percentage of two and one half percent (2.5%) to be equitable under the circumstances of this case.[31]

---

[30] The parties did not ask the Court, either in their pleadings or in presenting their cases at trial, to apportion or equitably distribute any marital debt. While this Court notes a recent V.I. Supreme Court empowering this Court to decree for the award of all marital property, which the Supreme Court held also encompasses marital debt, the Court declines to apportion the marital debt, if any, where the parties did not request that the Court do so in this case. *Drayton v. Drayton*, 65 V.I. at 346. The Court declines to address issues not raised by the parties. *See, e.g., Simpson v. Golden*, 56 V.I. 272, 280 (V.I. 2012) ("The rules that require a litigant to brief and support his arguments, both here and before the Superior Court, are not mere formalistic requirements. They exist to give the Superior Court the opportunity to consider, review, and address an argument before it is presented to this Court.").

[31] The Court is aware of at least one case that has disapproved such modification of the time rule formula's percentage. *In re Marriage of Hunt*, 909 P.2d 525, 543 (Colo. 1995) ("If the 'time rule' formula is used, the formula cannot be altered. As we explained above, the 'time rule' formula inherently accounts for various considerations and serves to simplify the trial court's task. Alteration of the formula undermines the integrity of the formula and detracts from its very purpose. If the multiplier representing the parties' shares (1/2 or fifty percent) is adjusted up or down as it was in this case, the method of distributing the pension becomes a hybrid."). However, in that case the disapproved formula used a percentage of 10% as "some form of rough justice to penalize the non-employee spouse for what the trial court

██ The Court calculates the length of the parties' marriage from the date they were married to the date of their divorce decree by the Court (March 9, 2016), although they both testified that they separated in 2012. The Court notes that the *Fuentes II* Court addressed this determination and noted that different jurisdictions have the termination date of the marriage defined by statute. *Fuentes II*, 41 V.I. at 94 (Terr. Ct. 1999).[32] The Court follows the controlling statute in our jurisdiction that defines marital property as property acquired subsequent to the marriage. 16 V.I.C. § 109(a)(7). Property acquired after a decree of legal separation is excluded from marital property. 16 V.I.C. § 109(a)(7)(C). The Court finds that, based on the statutory definition of marital property, the date of

---

viewed as her lackluster interest in one phase of her husband's military career." *Id.* Here, utilization of a percentage less than 50% is not a penalty, but rather, recognizing the reality that Ms. Henley possesses a pension of her own and is still gainfully employed while Mr. Smith is no longer employed. Mr. Smith testified that his annuity payments are his only source of income. Notably, a dissenting justice in the above case disagreed with majority's finding that the ½ ratio should not be disturbed.

> This mandatory multiplication by ½ necessarily results in the equal division between the spouses of the marital share of the pension benefits. The majority holds that a trial court that elects to use the 'time rule' formula has no discretion to alter this equal division of the marital portion of the pension benefits. I consider the majority's requirement of equal division to be an impermissible limitation on the discretion of the trial court to fashion an equitable distribution of marital property.

*Id.* at 545 (Lohr, J., concurring in part, dissenting in part). However, a more recent case from another jurisdiction noted that the percentage that a non-employee spouse is entitled is "typically" set at one half of the coverture fraction. *McGee v. McGee*, 214 W. Va. 36, 585 S.E.2d 36, 43 (2003). This suggests the percentage need not be set in stone. There are multiple cases, in the context of the application of the "time rule" formula, that do not multiply the marital portion of the pension benefits by ½ or 50%. *See, e.g., Jerry L.C. v. Lucille H.C.*, 448 A.2d 223, 226 (Del. 1982) (not an abuse of discretion to award non-employee spouse 40% of the retirement prorated for years of marriage in relation to years worked); *Dewan v. Dewan*, 17 Mass. App. Ct. 97, 455 N.E.2d 1236, 1239-40 (1983) (". . . the award is typically of a percentage (often a third or a half) of that portion of the pension benefits attributable to the period of the marriage." (citations omitted)); *Brower v. Brower*, 61 Mass. App. Ct. 216, 808 N.E.2d 836, 842 (2004) (not an error to award non-employee spouse 37.5%); *Brabham v. Brabham*, 950 So. 2d 1098 (Miss. Ct. App. 2007) (not an error to award non-employee spouse only 10%).

[32] *Fuentes II* set the date of the final divorce decree as the termination date, rather than the date the parties were separated, which was upheld as being within the discretion of the court. *Fuentes v. Fuentes*, 247 F. Supp. 2d 714, 720 (D.V.I. 2003) (*Fuentes III*). We acknowledge that *Fuentes III* may not be considered binding on this Court when addressing issues of common law, *see, e.g., Hamed v. Hamed*, 63 V.I. 529, 535 (V.I. 2015), but reach this same result based on the statutory language of 16 V.I.C. § 109(a)(7).

the divorce decree is the correct termination date of the marriage for purposes of equitably distributing marital property. The governing statute mandates this result in this case, where there was no decree of legal separation prior to the divorce decree.

Thereby, for the reasons stated in the above Opinion, it is **ORDERED**:

1. That Stanley D. Smith and Denise A. Henley shall each retain a 50/50 interest in Plot 17-1 Raphune Hill.

2. That Stanley D. Smith shall be solely responsible for any expenses, including taxes, insurance and maintenance fees related to the property from the date of the parties' divorce (March 9, 2016) until disposition of the property.

3. That the parties shall have the option to buy each other out of the property for a period of six (6) months after the date of this Order. The party wishing to buy the other party out shall inform the other party of his/her intent to do so within the six (6) month period. The party wishing to buy the other party out shall also secure financing within 30 days of notice to the other party and prior to the six (6) month deadline. Should both parties wish to buy each other out and reach an impasse, the property shall be put on the market and sold at fair market value. The proceeds shall be split 50/50, after Stanley D. Smith is reimbursed for one half of the property taxes and house insurance fees paid from the date of the parties' divorce (March 9, 2016) until the property is sold. Stanley D. Smith shall not be reimbursed for any other costs associated with the maintenance of the property.

4. Should neither party secure financing or wish to buy the other out, the Plot 17-1 Raphune Hill property shall be placed on the market once the six (6) month buy out period lapses. The Raphune Hill property shall be sold at fair market value and the proceeds split 50/50 between the parties after Stanley D. Smith is reimbursed for one half of the property taxes and house insurance fees incurred from the date of the parties' divorce (March 9, 2016) until the property is sold. Stanley D. Smith shall not be reimbursed for any other costs associated with the maintenance of the property.

5. That Stanley D. Smith turn over to Denise A. Henley any of her personal property currently in his possession; and,

6. That Denise A. Henley's request for the distribution of Stanley D. Smith's pension benefits is **GRANTED**, and GERS shall distribute her portion pursuant to the formula below.

*(Number of years of the marriage)_____ x net monthly benefit x 0.025*
*(Number of years of gov. service into pension) (after loan deduction)*

7. The parties are **ORDERED** to submit proposed Qualified Domestic Relations Orders consistent with the Court's opinion and formula outlined above.

8. The parties are to cooperate with one another to execute the necessary documents to carry out this Order and a failure to do so can subject the parties to contempt of Court or Court intervention to facilitate the ordered action.

9. **FURTHER ORDERED** that a copy of this Order be served on the parties and Darren John-Baptiste, Esq.