Richard F. BROWN, Appellant

v.

Lisa G. BROWN (now Robinson), Appellee

NO. 2013–CA–001515–MR

Court of Appeals of Kentucky.

RENDERED: JANUARY 16, 2015; 10:00 A.M.

BRIEF FOR APPELLANT: James D. Liebman, Frankfort, Kentucky

BRIEF FOR APPELLEE: Stephen C. Sanders, Frankfort, Kentucky

BEFORE: CLAYTON, DIXON, AND JONES, JUDGES.

## OPINION

JONES, JUDGE:

This matter is on appeal from an order of the Franklin Circuit Court awarding Appellee Lisa G. Brown (now Robinson), a pro-rata share of Appellant Richard F. Brown's gross monthly annuity under the Civil Service Retirement System. On appeal, Richard argues that the circuit court erred as a matter of law because its award to Lisa included cost-of-living adjustments ("COLAs") that Richard's civil retirement account received after the parties divorced. For the reasons more fully explained below, we AFFIRM.

## I. Factual and Procedural Background

Richard and Lisa were married on June 22, 1984, and divorced by final decree of the Franklin Circuit Court entered on October 18, 2002. The dissolution decree reserved decision on certain financial issues, which remained pending between the parties, including issues related to the division of Richard's civil and military retirement accounts. On July 2, 2004, the circuit court entered an order directing that "the marital portion" of Richard's retirement accounts was to be divided equally between the parties. The circuit court further ordered that qualified domestic relations orders ("QDROs") were to be entered consistent with the court's order dividing the retirement accounts.

Richard's military retirement account has been successfully divided. The only disputed issue concerns how to appropriately divide the civil retirement account with respect to the COLAs Richard received after the parties' divorce. On June 19, 2013, Lisa filed a motion with the circuit court requesting a QDRO order be entered granting her an equal division of Richard's civil retirement account earned during the marriage, including the COLAs Richard received after the parties' divorce. Richard responded that entry of a QDRO directing payment of half of the portion of the retirement account earned during the marriage to Lisa was appropriate and consistent with the circuit court's July 2004 order. Richard maintained, however, that Lisa was not entitled to any portion of the COLAs that he received after the parties divorced.

On August 7, 2013, the circuit court sustained Lisa's motion. The circuit court determined that Lisa was entitled to the portion of the COLAs, which corresponded to her share of the marital portion of the account. The circuit court concluded: "[b]ecause the court ordered a percentage share of [Richard's] retirement, the court finds that [Lisa] is entitled to include cost of living allowances when calculating her portion of the retirement account." The circuit court rejected Richard's argument that this was tantamount to awarding Lisa benefits earned after the parties' divorce. The circuit court concluded that Lisa's "entitlement to this benefit was earned at the time the parties agreed to a percentage division." On August 26, 2013, the circuit court entered a subsequent order, which is consistent with its prior order regarding the COLA adjustments; this order directs the United States Office of Personnel Management to pay Lisa's share of the retirement benefits directly to her.

This appeal followed.

## II. Standard of Review

The question before us is whether inclusion of the COLAs is consistent with the court's 2004 order, which awarded Lisa fifty-percent of the marital portion of Richard's civil service retirement account. Questions relating to the construction, operation, and effect of a dissolution order

are governed by the rules and provisions applicable to the construction of other contracts. *Richey v. Richey,* 389 S.W.2d 914 (Ky.1965). The interpretation of a contract is a matter of law to be reviewed *de novo. Cinelli v. Ward,* 997 S.W.2d 474 (Ky.App.1998).

### III. Analysis

Under Kentucky's statutory scheme for the distribution of property at dissolution, the trial court must first categorize each item of property as either marital or nonmarital under the framework embodied in KRS 403.190. Kentucky permits division as marital property of both vested and nonvested retirement accounts accumulated during the marriage. *Holman v. Holman,* 84 S.W.3d 903, 907 (Ky. 2002). "Pension and profit sharing plans are valued as of the date of the dissolution decree." *Clark v. Clark,* 782 S.W.2d 56, 62 (Ky.1990). However, "[i]t is the pension, not the benefits, which is the marital asset which is [valued and] divided by the court." *Brosick v. Brosick,* 974 S.W.2d 498, 503 –04 (Ky.App.1998). Courts generally use one of three methods to value the marital portion of the pension: the net present value method, the deferred distribution method, and the reserve jurisdiction method. *Armstrong v. Armstrong,* 34 S.W.3d 83, 85 (Ky.App.2000).

The circuit court valued Richard's pension at the time of the dissolution decree and determined that Lisa was entitled to fifty-percent of the marital portion of the pension. It is clear to us that the circuit court used the deferred distribution method when it initially valued the marital portion of Richard's retirement in 2004. Under that method, "the court predetermines the percentage of the pension income that the non-employee spouse will be eligible to receive once the pension is vested and matured." *Id.*

Citing *Foster v. Foster,* 589 S.W.2d 223, 225 (Ky.App.1979), and its progeny, Richard argues including the COLAs would violate the long-established rule that the non-employee spouse shall not be permitted to "share in any pension benefits earned after divorce and before retirement." *See also Armstrong v. Armstrong,* 34 S.W.3d 83 (Ky.App.2000). In other words, Richard maintains that inclusion of the COLAs is inappropriate because it would provide Lisa with benefits that did not exist in 2004 when the circuit court valued and divided Richard's pension.

There are no published Kentucky opinions directly on-point to guide us on this issue. Thus, we have examined the federal statutes and interpretative case law to gain an understanding of the nature and operation of the federal retirement COLAs. Our examination convinces us that the circuit court correctly determined that Lisa's portion of the marital retirement should include the COLAs. The COLAs are not "earnings" attributable to Richard's post-decree efforts, and therefore, their inclusion does not violate our case law or statutes. Moreover, we believe that inclusion of the COLAs is most consistent with the 2004 order awarding Lisa fifty-percent of the marital *value* of Richard's pension.

Most civilian federal employees fall under the Civil Service Retirement Act, 5 U.S.C. § 8331 *et seq.* In 1962, Congress amended the Act to provide for automatic COLAs; the COLA portion of the Act has since been amended numerous times. *See Zucker v. United States,* 758 F.2d 637 (Fed.Cir.1985). Congress' purpose of providing COLAs was to prevent any significant loss of purchasing power due to inflation. *National Ass'n of Retired Fed. Emp. v. Horner,* 633 F.Supp. 511, 512 –13 (D.D.C.1986). "COLAs do

not increase the amount of the payments in real dollars but rather simply assure that inflation does not decrease the value of the payment." *Hong–Yee Chiu v. United States,* 18 Cl.Ct. 567, 571 (1989) *aff'd in part, rev'd in part sub nom. Chiu v. United States,* 948 F.2d 711 (Fed.Cir.1991). "[T]here is no distinction between some 'underlying' annuity and the COLA. The COLA is merely part of the calculation of the current annuity." *Horner,* 633 F.Supp. at 513.

One cannot categorize federal retirement COLAs as separate "earned" retirement benefits. *Id.* Federal employees do not have a property right in scheduled cost-of-living adjustments to retirement annuities received under the Civil Service Retirement Act. *Zucker,* 758 F.2d at 639 ("Until a retiree becomes eligible to receive a particular COLA, his or her right to that adjustment is subject to any lawful changes made to the section (5 U.S.C. § 8340) from which the claim to entitlement arises.").

We do not believe that the federal retirement COLAs can be characterized properly as post-marital earnings. Federal retirement COLAs are not "earned" based on one's investment or labor. Under federal law, they do not even give rise to a property right until such time as they are payable under statute. The COLA portion of an annuity payment is "nothing more than a 'government fostered expectation' that retirees will be provided retirement annuities which will not be ravaged by inflation." *Zucker,* 758 F.2d at 640.

Awarding Lisa the COLAs with respect to the marital portion of Richard's retirement is not tantamount to awarding her a benefit earned by Richard after the marriage. Rather, consistent with the purpose of federal COLAs, including the COLAs in Lisa's portion of the marital property, is necessary to ensure that the value of her

marital portion of the retirement benefits keeps pace with inflation and equals the value of Richard's marital portion of the retirement. Excluding the COLAs from Lisa's portion of the payout would actually devalue her marital interest and result in Richard receiving a greater percentage of the marital portion than Lisa in direct contravention of the dissolution decree.

Thus, in the case, where the original decree used the deferred distribution method to value the marital portion of a federal civil service retirement, applying the COLA to the marital portion does not increase the corpus, it simply equalizes and maintains the present value of the percentage that was awarded to the parties at the time of dissolution. Had the court used the net present value method and awarded Lisa a fixed dollar value, the result would be different because there would be no logical connection between the COLA and the marital portion awarded to Lisa.

We further observe that our result is in accord with the Federal Office of Personnel Management's interpretation of the COLA issue. Its guidelines indicate that: "[u]nless the court order expressly directs that OPM not add COLA's to the former spouse's share of the employee annuity, *OPM will add COLA's to keep the former spouse's share at the stated percentage.*" *See* United States Office of Personnel Management, *A Handbook for Attorneys on Court-ordered Retirement, Health Benefits, and Life Insurance Under the Civil Service Retirement System, Federal Employees Retirement System, Federal Employees Health Benefits Program, Federal Employees Group Life Insurance Program,* (Rev. July 1997) (emphasis added).

In conclusion, we believe that where the original decree made no mention of the COLA and awarded Lisa a percentage of

the retirement account itself, the circuit court correctly concluded that Lisa was entitled to share equally in the COLA as it applied to the marital portion of Richard's retirement. This is not allowing Lisa to enjoy a benefit Richard "earned" post-decree; it is maintaining the value of her marital interest vis-à-vis inflation. Including the COLA is perfectly in accord with the nature and purpose of the federal retirement COLA. Most importantly, it is consistent with the original 2004 order equally dividing the marital portion of the pension between the parties.

Thus, we conclude that where the original dissolution decree used the deferred distribution method and made no mention of the exclusion of any future COLAs, the circuit court was correct in holding that the former spouse was entitled to inclusion of the COLA on her marital percentage of the retirement payout upon distribution. This approach allows the former non-employee spouse to fully realize the present-day value of the marital portion of the pension. To hold otherwise, would result in a reallocation of the percentage values *i.e.* the non-employee spouse would receive less than the fifty percent value of the marital portion and the employee spouse would receive more.

## IV. Conclusion

For the reasons set forth above, we affirm the decision of the Franklin Circuit Court.

ALL CONCUR.