RENDERED:  APRIL 30, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2017-CA-1691-MR

JULIA LEIGH LIVERS                                        APPELLANT

|  | APPEAL FROM MARION CIRCUIT COURT |
|---|---|
| v. | HONORABLE SAMUEL TODD SPALDING, JUDGE |
|  | ACTION NO. 15-CI-00118 |

BYRON RANDALL LIVERS                                    APPELLEE

AND                             NO. 2017-CA-1721-MR

BYRON RANDALL LIVERS                           CROSS-APPELLANT

|  | CROSS-APPEAL FROM MARION CIRCUIT COURT |
|---|---|
| v. | HONORABLE SAMUEL TODD SPALDING, JUDGE |
|  | ACTION NO. 15-CI-00118 |

JULIA LEIGH LIVERS                                 CROSS-APPELLEE

** ** ** ** **

BEFORE: JONES, LAMBERT, AND K. THOMPSON, JUDGES.

LAMBERT, JUDGE: Julia Leigh Livers appeals from the August 25, 2017, order of the Marion Circuit Court, arguing that the circuit court erred in its division and valuation of marital property and its holding that Julia was not entitled to attorney's fees. Byron Randall Livers cross-appeals from the same order, arguing that the circuit court erred in its valuation of the non-marital interest of Julia's retirement account. After careful consideration, we affirm on appeal and cross-appeal.

The parties were married in 2004. They share one son, born in 2007.[1] They separated in 2014, and Byron filed for dissolution of marriage on April 23 of the following year. Several hearings were held between then and the final hearing, held on July 27, 2017. The circuit court entered its order of dissolution on July 31, 2017, and its findings of fact and order on August 25, 2017.[2] Both parties filed motions to alter, amend, or vacate pursuant to Kentucky Rule of Civil Procedure

_____

[1] Byron has two children (a son and a daughter) from his previous marriage. His first wife is deceased.

[2] After Julia complained that she did not timely receive the August 25, 2017, order, the circuit court entered an order decreeing it, *nunc pro tunc*, to be entered on September 7, 2017.

(CR) 59.05.  The circuit court order ruling on the motions was entered on

September 22, 2017, after which the appeal and cross-appeal were filed.[3]

We begin by stating the standard of reviewing an order allocating

property and resolving other issues between parties dissolving their marriage.  CR

52.01 provides the general framework for the circuit court as well as review in the

Court of Appeals:

> In all actions tried upon the facts without a jury or with
> an advisory jury, the court shall find the facts specifically
> and state separately its conclusions of law thereon and
> render an appropriate judgment[.]  Findings of fact shall
> not be set aside unless clearly erroneous, and due regard
> shall be given to the opportunity of the trial court to
> judge the credibility of the witnesses.

*See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted) (An

appellate court may set aside a lower court's findings made pursuant to CR 52.01

"only if those findings are clearly erroneous.").  The *Asente* Court went on to

address substantial evidence:

> "[S]ubstantial evidence" is "[e]vidence that a reasonable
> mind would accept as adequate to support a conclusion"
> and evidence that, when "taken alone or in the light of all
> the evidence, . . . has sufficient probative value to induce
> conviction in the minds of reasonable men."  Regardless
> of conflicting evidence, the weight of the evidence, or the
> fact that the reviewing court would have reached a
> contrary finding, "due regard shall be given to the
> opportunity of the trial court to judge the credibility of
> the witnesses" because judging the credibility of

_____

[3]  This matter was held in abeyance from May 31 to November 11, 2018.

witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Id.* at 354 (footnotes omitted). *See also McVicker v. McVicker*, 461 S.W.3d 404, 415 (Ky. App. 2015).

In *Young v. Young*, 314 S.W.3d 306, 308 (Ky. App. 2010), this Court specifically addressed the standard of review for the classification of property:

A trial court's ruling regarding the classification of marital property is reviewed *de novo* as the resolution of such issues is a matter of law. *Heskett v. Heskett*, 245 S.W.3d 222, 226 (Ky. App. 2008). We review a trial court's determinations of value and division of marital assets for abuse of discretion. *Armstrong v. Armstrong*, 34 S.W.3d 83, 87 (Ky. App. 2000) (quoting *Duncan v. Duncan*, 724 S.W.2d 231, 234-35 (Ky. App. 1987)).

KRS[4] 403.190 provides for the assignment and division of property and provides in relevant part as follows:

(1) In a proceeding for dissolution of the marriage or for legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:

---

[4] Kentucky Revised Statutes.

(a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;

(b) Value of the property set apart to each spouse;

(c) Duration of the marriage; and

(d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

KRS 403.190(2)(a) defines "marital property" as "all property acquired by either spouse subsequent to the marriage except . . . [p]roperty acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom[.]"

Julia first asserts that the circuit court abused its discretion in failing to require Byron to trace the funds in his children's bank accounts to prove that the increase in value was nonmarital. We disagree with this contention. Byron testified that the children's bank accounts were funded with social security payments received as benefits from the death of his first wife. Julia offered no evidence to rebut this testimony. We can find no error in the circuit court's allocation of this property, including the growth during the marriage between

-5-

Byron and Julia, as belonging to Byron's children from his first marriage. CR 52.01; *McVicker*, 461 S.W.3d at 415.

Julia likewise insists that the circuit court erred in failing to assign an increase to the value of the parties' home. Julia concedes that Byron owned the home, free of debt, prior to her marriage to him, and that the home itself was thus nonmarital. She maintains, though, that the property increased significantly in value during the marriage and that she was denied the opportunity to have the property appraised to prove this assertion.

Again, we find no error. The parties had been separated since 2014 and were litigating the division of assets for nearly three years when the final hearing was held. Julia had ample time to gather the information she needed to meet her burden of proving her theory of the home's current market value. Simply speaking to realtors (none of whom was called to testify) and doing internet research was not sufficient evidence to convince the circuit court of Julia's asserted value. As the circuit court stated, Julia "did not produce any expert testimony concerning the value of this residence and admitted she has never bought or sold a home previously."

The circuit court found that there was a $5,000.00 increase in the value of the residence. It included the increase in value in Byron's list of assets received and was used in the circuit court's calculation of equalizing the

allocations to each party.  These findings are supported by substantial evidence, and we decline to disturb them.  *Asente*, 110 S.W.3d at 354.

The unimproved property (42 acres, purchased by the parties for $76,000.00) and the Wyndham timeshare (purchased for $41,000.00, with $14,000.00 still owed at time of dissolution) were ordered sold by the circuit court, with the net proceeds to be divided equally.  We see no error in that decision.  *Id.*

We will not address the circuit court's findings regarding Byron's businesses other than to say that, once again, there was substantial evidence of record to support the circuit court's decision and, thus, we affirm it.  *Id.*

Julia next argues that the circuit court erred in denying her an award for attorney's fees.  In this vein, Julia states that the circuit court erred in its interpretation of KRS 403.220 ("Costs of action and attorney's fees").  This statute's wording indicates that the award is within the circuit court's discretion:

> The court from time to time after considering the financial resources of both parties **may** order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.  The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

(Emphasis added.)  We therefore review the decision of whether to award attorney's fees for abuse of the circuit court's discretion.  *Andrews v. Andrews*, 611

S.W.3d 271, 275 (Ky. App. 2020) (citations omitted). "[W]e find no abuse of discretion in the [circuit] court's decision not to award [Julia] any fees or costs based upon her argument that there was a disparity of financial resources." *Herbener v. Herbener*, 587 S.W.3d 343, 355 (Ky. App. 2019).

Julia lastly argues that the circuit judge should have disqualified himself "when Byron's prior counsel was employed as his law clerk." KRS 26A.020 requires Julia to have filed "with the circuit clerk [her] affidavit that the judge will not afford [her] a fair and impartial trial[.]" The record contains no such affidavit. Furthermore, the circuit court sought an advisory opinion from the Judicial Ethics Commission in which the JEC stated that no conflict would be deemed to have occurred if Byron's former counsel did not have access to the parties' files or any of the discussions pertaining to this case during the course of his employment with the circuit court. Julia points to nothing in the record which indicates that anything other than strict adherence to this advisory opinion has taken place. "We find no error in the circuit court's refusal to recuse in this matter." *Wilson v. Askew*, 568 S.W.3d 375, 384 (Ky. App. 2019).

We next turn to Byron's sole argument on cross-appeal, namely, that the circuit court erred in its valuation of Julia's nonmarital interest in her retirement account. Specifically, Byron is asserting that the increase in value, during the marriage, of Julia's retirement account should have been apportioned as

-8-

marital property and divided accordingly. The circuit court did apportion a marital contribution of $12,976.90. It then factored in that amount toward the growth in the account and assigned a marital value of $27,252.38.

This increase in value was included in Julia's list of assets received and was used in the circuit court's calculation of equalizing the allocations to each party. This finding is supported by substantial evidence, and we decline to disturb it. *Asente*, 110 S.W.3d at 354.

The judgment of the Marion Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT/
CROSS-APPELLEE:

Dawn L. McCauley
Lebanon, Kentucky

BRIEF FOR APPELLEE/
CROSS-APPELLANT:

Joseph R. Stewart
Lebanon, Kentucky