RENDERED:  JULY 21, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1363-MR
AND
NO. 2022-CA-0355-MR

SHERYL ANN KOSITZKY                                APPELLANT

v.

APPEALS FROM BARREN FAMILY COURT
HONORABLE MICA WOOD PENCE, JUDGE
ACTION NO. 21-CI-00053

NEIL FRANK KOSITZKY                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, KAREM, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  These appeals arise from orders of the Barren Family Court in a dissolution action and address the designation and division of retirement accounts, the failure to award maintenance, and the modification to the division of marital personal property.  We affirm.

Sheryl Ann Kositzky and Neil Frank Kositzky were married in Michigan in July 1989. Sheryl filed a petition to dissolve the marriage in the Barren Family Court on February 3, 2021, when she was 66 years old and he was 76 years old. They were both retired, and Sheryl indicated that they had separated the same day she filed the petition. Sheryl sought a fair and equitable division of the parties' marital property and debts, the restoration of their respective non-marital property, and an award of temporary and permanent maintenance. She also sought an award of attorney fees and costs. In his answer, Neil admitted the allegations in Sheryl's complaint except those regarding maintenance and attorney fees and costs.

Sheryl filed a motion seeking temporary maintenance on March 16, 2021. She stated that she drew just over $600.00 per month while Neil earned more than $10,000.00 per month. She intended to relocate and needed her own apartment or home, with a reasonable rent or mortgage of $1,200.00. She wanted an additional $2,800.00 in temporary maintenance to equalize the marital income and to provide for her reasonable needs. Sheryl included an affidavit containing the same information. In his response, Neil stated that Sheryl had sufficient assets to provide for her reasonable needs, including $120,000.00 from the sale of the marital home (in his pre-trial compliance, he indicated they split the proceeds and each received $110,457.00), more than $10,000.00 in credit union accounts, and

approximately $11,000.00 from the sale of home furnishings, yard equipment, and tools. At a March 31, 2021, hearing, the parties and court opted to set the matter for a final trial rather than schedule a temporary maintenance hearing.

In his pre-trial disclosure, Neil disputed that Sheryl was entitled to maintenance, noting that she had received $110,457.00 from the sale of the house and approximately $11,000.00 from the sale of personal property, and that she would be allocated a share of his retirement benefits through a Qualified Domestic Relations Order (QDRO). She also received $673.00 per month in social security benefits. Neil included his final verified disclosure statement in a supplemental filing stating that he was retired and earned $8,206.44 per month through retirement and social security benefits. They owned several marital vehicles, including a 2014 Ford Pickup with $18,000.00 in equity, a 2019 Mercedes RV with $56,000.00 in equity, a 2005 Honda Trike with $4,300.00 in equity, and a 2008 Honda Silverwing with $2,100.00 in equity for a total of $80,400.00, without any debt owed. The Ford Pickup was in Sheryl's possession, and the rest were in his possession. Neil listed his monthly expenses as totaling $4,635.00.

In her pre-trial disclosure, Sheryl stated that she earned $673.00 per month in social security benefits and that she had been a stay-at-home mother and had run the family boarding farm during the marriage. She had not worked outside of the home for many years; Neil had always been the "bread-winner." She

therefore requested an award of maintenance. In her final verified disclosure statement filed shortly thereafter, Sheryl included a living expenses schedule showing monthly expenses of $4,752.00 per month. She later filed copies of receipts from her living expenses.

Both parties testified by deposition prior to the trial. Neil testified that he was living in Florida in the RV. After he left the marital residence in February, he lived in his daughter's basement in Michigan for a month, for which he paid $1,100.00 per month. He agreed that any money that went into his retirement accounts after he married Sheryl in 1989 was marital property; anything prior to that was non-marital. He retired in 2000. He and Sheryl both had three children at the time they were married; his first wife had custody of his children, and he would have them every other weekend. Two of Sheryl's children lived with them. Sheryl helped to raise the children and took care of the farm. She had worked as a veterinary assistant for several years.

In her deposition, Sheryl stated that she was currently living in Buckingham, Iowa, in her son's house, along with his wife and their children. She had last worked about eight years before and had not worked outside of the home since that time. As Neil had testified, he made enough money to support the family. She and Neil had operated a boarding farm for cattle and horses.

The court held a trial on May 28, 2021, where the only witnesses were Neil and Sheryl. Sheryl called Neil first to testify on cross-examination. He testified about his income through his retirement plans and social security, his non-marital claims, personal property, and various financial issues. Sheryl introduced Neil's financial disclosure statements during her examination. On direct examination during his case-in-chief, Neil testified that he was 76 years old and that he was not able to be gainfully employed due to lack of strength and other physical issues.

Sheryl testified that since the separation, she had been living off the proceeds of the sale of the marital residence and personal property items, along with $673.00 in social security benefits. She was paying $1,000.00 per month in rent to her son. And she had provided the court with potential rental properties where she was living in Iowa, which were around $1,300.00 per month. She had last worked outside of the home seven years ago, when she earned $10.00 per hour as a veterinary assistant. She was 66 years old and had asthma. She wanted to live comfortably in a safe place, not extravagantly. Sheryl testified that since March 26th, when she left the marital home, it had cost her $4,049.37, including two months of rent, food, gas, and basic utilities. Although she said she was capable of working, she was not currently looking for work. She said she had spent her whole

life taking care of the family and farms rather than building a career, "so probably the best [she was going to] do is flipping hamburgers."

In a calendar order, the court indicated that the parties had agreed to sell the Mercedes RV to Camping World for $69,000.00 and that they would equally divide the proceeds. Proposed findings and any legal arguments on the issues were to be filed in 20 days.

In her proposed findings related to maintenance, Sheryl stated that she had not claimed any non-marital property and that Neil had been awarded half of the proceeds from the sale of the marital residence in Glasgow, Kentucky. She stated she had not worked outside of the home in more than five years, and when she did so, she earned $10.00 per hour. Sheryl had stayed home to raise the parties' children. They had been married for 32 years, and she was 66 years old. She earned $673.00 in monthly social security benefits, and her monthly expenses totaled $4,752.00 pursuant to her final verified disclosures. Based on his income, Neil had enough to meet his own reasonable needs while meeting her reasonable needs. Therefore, she requested an award of $2,000.00 per month for 15 years. She also requested attorney fees and costs based upon the disparity in their respective incomes. In his proposed findings, Neil stated they would each be receiving marital assets equaling $212,399.35, and Sheryl would also be receiving her share of his retirement funds. Because she would be awarded sufficient

property to provide for her reasonable needs, Neil argued that Sheryl should not be awarded maintenance.

On August 20, 2021, the court entered its findings of fact, conclusions of law, and decree of dissolution of marriage. After splitting the marital property and considering the amount she would receive from Neil's retirement accounts (this would increase her monthly income by $1,871.00), the court determined that Sheryl was not entitled to an award of permanent maintenance. It stated: "[Sheryl] did not request an amount for permanent maintenance in any pretrial documents, nor did she testify to an amount she believed would be necessary to meet her reasonable needs. [Sheryl] testified that she is capable of work and can get a job flipping burgers." Because she had not stated an amount of maintenance she claimed, the court determined that she was not entitled to an award pursuant to Kentucky Family Court Rules of Procedure and Practice (FCRPP) 5. In addition, the court determined that pursuant to Kentucky Revised Statutes (KRS) 403.200, both parties had been awarded sufficient property to provide for their reasonable needs. The court also declined to award any attorney fees or costs.

Sheryl moved the court to alter, amend, or vacate the order pursuant to Kentucky Rules of Civil Procedure (CR) 59.05 and for amendment or additional findings pursuant to CR 52.02. Her arguments were related to the awards of stock accounts, the retirement/pension accounts, personal injury money, and

maintenance. She requested additional findings as to her ability to support herself, noting that the court had only stated that she could flip burgers. In addition, she stated that she had sought $4,000.00 in temporary maintenance, which was discussed at the March 31, 2021, hearing but not ruled on due to the quickly scheduled trial. She argued that she had complied with FCRPP 5(1)(a)(i) and that she had made her final verified disclosures an exhibit at the trial, which included her monthly expenses supporting her maintenance request. In response to her maintenance argument, Neil stated that she had not requested an amount for permanent maintenance in any pre-trial document or testified as to an amount that would meet her reasonable needs pursuant to FCRPP 5(1)(a)(i). She did testify that she was capable of working and could obtain a job. She had worked as a veterinary assistant for 11 years. Sheryl had also failed to file her proof of current income or her most recent income tax forms. In addition, Sheryl had been awarded substantial assets from the divided marital property, including $110,457.00 from the sale of the house, $11,529.00 from the sale of personal property, and $34,500.00 from the sale of the RV.

The court heard arguments from the parties on September 8, 2021, after which it entered an order granting the motion in part and denying it in part. It granted Sheryl's motion as to the award of stock accounts, denied it as to Neil's retirement/pension accounts, granted it related to the personal injury amount to

clarify the judgment, and denied it as to maintenance.  Regarding maintenance, the

court stated:

> 5.  . . . .  The Court clearly explained the decision concerning Maintenance in the Decree of the Dissolution of Marriage (filed 08-20-21).  [Sheryl] failed to establish that she was unable to meet her reasonable needs considering the award of marital property herein.  Specifically, the award of a portion of the marital income.  [Sheryl] argues that her motion for temporary maintenance stating a specific amount of maintenance requested, should be sufficient as the Motion was not heard separate from the final divorce trial.  Counsel for [Sheryl] incorrectly states that the Motion for Temporary Maintenance requested $4,000/month.

The court then quoted from the motion for temporary maintenance in which Sheryl

stated that she anticipated her rent or mortgage would be $1,200.00 per month and

that she would need an additional $2,800.00 to equalize the marital income and

provide for her reasonable needs.  It continued:

> 7.  Regardless of this procedural issue, the Court still went through the analysis to determine whether [Sheryl] is entitled to maintenance.  The Court did not find that sufficient evidence was presented to meet the burden necessary for an award of maintenance.  Specifically, [Sheryl] did not present evidence of [her] expenses, showing a specific amount of money that would be necessary.  Counsel for [Sheryl] referenced "documents" and "disclosure," provided to the court, but none were admitted as exhibits.

> The court entered its amended findings and conclusions on November

3, 2021.  The court ordered that Sheryl was entitled to half of Neil's retirement

accounts that accrued during their marriage: 50% of the Municipal Employee's Retirement System of Michigan (MERS) account; 50% of the portion of the Michigan Carpenters' Pension Fund earned from July 8, 1989, until August 1, 1999; and 50% of the portion of the United Brotherhood of Carpenters Pension Fund from July 8, 1989, until January 1, 2000. Sheryl was entitled to payments of her share starting on March 16, 2021. The Court ordered Neil to tender a QDRO for each retirement account. The judgment would be final and appealable pursuant to CR 54.01 once the court had signed the QDROs that it had ordered to be filed. The QDROs were entered on November 17, 2021.

On November 12, 2021, Sheryl filed a notice of appeal from these orders (Appeal No. 2021-CA-1363-MR).

Also on November 12, 2021, Neil filed a motion to alter, amend, or vacate the amended findings of fact, conclusions of law, and decree of dissolution pursuant to CR 59.05. This was related to his retirement benefits and a miscalculation in Paragraph 7 of the total value of vehicles and miscellaneous items he had been awarded. The court listed the total value of these items as $27,680.00 rather than $9,180.00. When compared to the amount of personal property Sheryl was awarded in Paragraph 6 ($35,000.00), the division was no longer equitable. In response, Sheryl argued that the family court had lost jurisdiction to rule on Neil's motion because she had filed a notice of appeal. On

-10-

November 24, 2021, Neil filed a motion related to the filing of the notice of appeal, arguing that the court should consider the timely filed motion to alter, amend, or vacate.

The court heard arguments from the parties on December 8, 2021, related to the calculation error, and the court entered an order on March 7, 2022, granting Neil's motion in part and denying it in part. The court found that it had retained jurisdiction to rule on Neil's motion "because the Amended Decree expressly stated that it was not final and appealable until the QDROs were entered by the Court, which did not occur until November 17, 2021, after [Neil] filed the present Motion and [Sheryl] filed the Notice of Appeal." It also retained jurisdiction under CR 73.02(1)(e) (now Kentucky Rules of Appellate Procedure (RAP) 3(E)). The court then agreed that it had miscalculated the value of personal property Neil had been awarded under the amended decree, which should have been $9,180.00 rather than $27,680.00. Therefore, it concluded that its division of marital property was not equitable due to the extent of the disparity between the values of personal property awarded to each party. While the court did not opt to equalize the values of the miscellaneous items awarded to each party, it did decide to do so as to the vehicles. Sheryl had been awarded the truck with a value of $21,000.00 while Neil had been awarded a Honda Trike worth $4,300.00 and a Honda Silverwing worth $2,100.00. To equalize the division, the court ordered

Sheryl to pay Neil half of the difference in values of her vehicle and the vehicles awarded to Neil. Therefore, the family court ordered her to pay $7,300.00 to Neil within 60 days of the entry of the order.

Finally, the court, *sua sponte*, replaced Paragraph 29 of the amended decree related to maintenance so that it would provide as follows:

> 29. [Sheryl] did not request an amount for permanent maintenance in any pretrial documents, nor did she testify to an amount she believed would be necessary to meet her reasonable needs. [Sheryl] testified that she is capable of work and can get a job flipping burgers. Furthermore, [Sheryl] did not present any testimony or submit any documents into evidence that provided any info as to her monthly expenses. While the Court notes that [Sheryl] did file a Final Verified Disclosure Statement on May 20, 2021, the Disclosure Statement was not offered into evidence during the May 28th hearing.

Sheryl filed her second notice of appeal from this order (Appeal No. 2022-CA-0355-MR).

On appeal, Sheryl seeks review of the family court's division of marital property, specifically its lack of analysis as to Neil's non-marital claim to his retirement benefits; its failure to award her maintenance; its ruling that the March 4, 2022, order did not become final and appealable until the QDROs were entered; its modification of the division of marital property, including ordering Sheryl to repay $7,300.00 to Neil; and its *sua sponte* modification to the maintenance ruling.

-12-

CR 52.01 provides the general framework for the family court as well as review in the Court of Appeals: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.] . . . Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted) (An appellate court may set aside a lower court's findings made pursuant to CR 52.01 "only if those findings are clearly erroneous."). The *Asente* Court defined substantial evidence as:

> "[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Id.* at 354 (footnotes omitted). With this standard in mind, we shall address the issues Sheryl raises in her appeals.

-13-

For her first argument, Sheryl contends that the family court failed to properly classify portions of two of Neil's retirement accounts (the United Brotherhood of Carpenters and the Michigan Carpenters' Union retirement accounts) as marital or non-marital property, arguing that Neil had not traced his non-marital interest in either account. Our standard of review is as follows:

> A trial court's ruling regarding the classification of marital property is reviewed *de novo* as the resolution of such issues is a matter of law. *Heskett v. Heskett*, 245 S.W.3d 222, 226 (Ky. App. 2008). We review a trial court's determinations of value and division of marital assets for abuse of discretion. *Armstrong v. Armstrong*, 34 S.W.3d 83, 87 (Ky. App. 2000) (quoting *Duncan v. Duncan*, 724 S.W.2d 231, 234-35 (Ky. App. 1987)).

*Young v. Young*, 314 S.W.3d 306, 308 (Ky. App. 2010).

> KRS 403.190(2) defines "marital property" as:
>
> [A]ll property acquired by either spouse subsequent to the marriage except:
>
> > (a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;
> >
> > (b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation;

(d) Property excluded by valid agreement of the parties; and

(e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

In *Shown v. Shown*, 233 S.W.3d 718, 720 (Ky. 2007), the Supreme Court of Kentucky specifically addressed the nature of retirement benefits:

Unless specifically exempt by statute, Kentucky treats all retirement benefits accumulated during the marriage as marital property subject to classification and division upon divorce. KRS 403.190; *Holman v. Holman*, 84 S.W.3d 903, 907 (Ky. 2002). We have reasoned that "[r]etirement benefits are classified as marital property not because the General Assembly failed to include them within the exclusions, but rather because they are a form of deferred compensation or savings earned during the marriage similar to income earned or savings accumulated during the marriage." *Holman*, 84 S.W.3d at 907.

And in *Armstrong v. Armstrong*, 34 S.W.3d 83, 86 (Ky. App. 2000), this Court stated:

[P]ension and profit sharing plans should be valued on the date of the divorce decree. *Clark v. Clark*, Ky.App., 782 S.W.2d 56, 62 (1990). Also, we are mindful that a settlement of the property rights of parties "should be finalized as much as possible at the time of the divorce." *Light v. Light*, Ky.App., 599 S.W.2d 476, 479 (1980). Furthermore, "[i]t is the pension, not the benefits, which is the marital asset which is divided by the court."

*Brosick v. Brosick*, Ky.App., 974 S.W.2d 498, 503 (1998). More importantly, a non-employee spouse "is not entitled to share in any pension benefits earned after divorce and before retirement[.]" *Foster* [*v. Foster*, 589 S.W.2d 223, 225 (Ky. App. 1979)].

To resolve this matter, we must look to the findings of the family court, which are supported by substantial evidence in the record. The court stated that Neil worked as a carpenter and that he had begun investing in the two retirement accounts at issue in 1977. Following his retirement in 1999, Neil began receiving monthly pensions from the accounts in the gross amounts of $3,738.61 and $3,020.51. The family court noted that "[a] portion of each of these pensions were accrued before the marriage of July 8, 1989, and ten years were accrued during the marriage." Sheryl "testified that she is not asking for any retirement accumulated before the marriage and [Neil] did not deny that she was entitled to the portions accrued during the marriage." The court ultimately awarded Sheryl 50% of the retirement accounts that were earned during their marriage and ordered Neil to tender a QDRO for each account, which he did in October 2021 and which the court entered the following month.

In ruling on Sheryl's motion to alter, amend, or vacate regarding the lack of a specific amount awarded to her from these two retirement accounts, the court stated that "neither party submitted an accounting to the Court for the Court to make a detailed finding concerning specific amounts accrued during the

-16-

marriage." There was no dispute that Sheryl was entitled to the portions of the accounts that were accrued during the marriage. But because neither party presented testimony as to the rate of contribution of the pension during the marriage, the court could not state an exact amount of the portion Sheryl would receive. In addition, it noted that tendering a QDRO was the appropriate way to handle the division of these accounts, citing *Armstrong v. Armstrong*, *supra*.

We disagree with Sheryl's contention that tracing had anything to do with this issue. Tracing is used to determine whether property, or some portion of it, is marital or non-marital:

> "Tracing" is defined as "[t]he process of tracking property's ownership or characteristics from the time of its origin to the present." In the context of tracing nonmarital property, "[w]hen the original property claimed to be nonmarital is no longer owned, the nonmarital claimant must trace the previously owned property into a presently owned specific asset." The concept of tracing is judicially created and arises from KRS 403.190(3)'s presumption that all property acquired after the marriage is marital property unless shown to come within one of KRS 403.190(2)'s exceptions. A party claiming that property, or an interest therein, acquired during the marriage is nonmarital bears the burden of proof.

*Sexton v. Sexton*, 125 S.W.3d 258, 266 (Ky. 2004) (footnotes omitted). In support of her argument, Sheryl relies upon this Court's unpublished opinion in *Keeney v. Keeney*, No. 2009-CA-001021-MR, 2011 WL 336719 (Ky. App. Feb. 4, 2011),

which addressed the nature of a settlement the husband received as a result of a work injury.

> Simply arguing that the FELA settlement is "property having both marital and non-marital components[,]" (Appellants' brief, p. 4), is not sufficient to overcome the presumption of KRS 403.190(3). Even if it could be inferred that the settlement is a mixed asset, the family court would have to speculate as to what percentage is marital and what percentage is non-marital. The presumption of KRS 403.190(3) frees the court from the perils of such speculation. Again, it fell to William to provide proof sufficient to identify the specific amount of the settlement proceeds that were non-marital. William's uncertainty whether the non-marital portion represented merely "the bulk [or] the entirety" of the proceeds assures us that even William himself can do no more than speculate.

*Keeney*, 2011 WL 336719, at *3. We cannot hold that the mixed asset analysis in *Keeney* has any application to the retirement benefit in this case.

In *Muir v. Muir*, 406 S.W.3d 31 (Ky. App. 2013), this Court addressed tracing as it relates to retirement benefits and held that, based upon the nature of such benefits, tracing is not required:

> Robert next argues that Ardell failed to meet her burden of tracing the non-marital portion of her Kentucky Deferred Compensation retirement benefits and cites *Terwilliger v. Terwilliger*, 64 S.W.3d 816, 820 (Ky. 2002), in support of this proposition. Robert's argument is totally without merit. The family court established that Ardell's retirement benefits acquired during the marriage were marital property and divided them accordingly. Robert attempts to have this Court award him Ardell's retirement benefits acquired prior to

-18-

> the marriage and subsequent to the parties' separation because Ardell did not trace the benefits. Robert mistakes these benefits, which are easily definable as they accrue throughout a marriage, for marital property, such as gifts of property, money, etc., that require tracing if one party is claiming a non-marital interest. Robert's argument is completely without merit, and the trial court did not err in this regard.

*Muir*, 406 S.W.3d at 36. Accordingly, Neil was not required to provide tracing for the retirement accounts.

Here, the parties agreed that Sheryl would only be entitled to half of the retirement accounts earned during the marriage, and the family court appropriately ordered Neil to tender QDROs to address the division. That the amount Sheryl would receive from these two accounts was not precisely known at the time the order was entered is immaterial. We find no error or abuse of discretion in the family court's ruling as to the division of Neil's retirement accounts.

Next, Sheryl argues that the family court erred when it concluded that she was not entitled to an award of maintenance. Whether to award maintenance "is a matter that comes within the discretion of the trial court." *Browning v. Browning*, 551 S.W.2d 823, 825 (Ky. App. 1977).

First, Sheryl argues that the family court incorrectly held that she was not entitled to an award of maintenance due to a "procedural failure" to request a specific amount pursuant to FCRPP 5(1)(a)(i). That Rule provides, in its entirety:

(a) All motions to establish or modify temporary or permanent maintenance shall be accompanied by the following:

>(i) A statement from movant setting forth the amount of maintenance requested;

>(ii) Copies of the movant's last three pay stubs or, if movant is self-employed, proof of the movant's current income;

>(iii) An affidavit setting forth movant's monthly expenses and income and the monthly income of the party against whom the motion is brought, if known;

>(iv) The most recently filed federal and state income tax return; and

>(v) The notice of hearing accompanying the motion, which shall contain the following statement "You must file with the Court, at least 24 hours prior to the time of the hearing, copies of your last three pay stubs, or if self-employed, proof of your current income, your most recently filed federal and state income tax returns and an affidavit setting forth your monthly expenses and income."

(b) At least 24 hours prior to the hearing, the responding party shall file with the court, and serve the movant with copies of the following information:

>(i) His or her last three pay stubs or, if self-employed, proof of current income;

>(ii) His or her most recently filed federal and state income tax returns; and

(iii) An affidavit setting forth his or her
monthly expenses and income.

We agree with Sheryl that she sufficiently complied with this Rule by requesting $4,000.00 per month in her motion for temporary maintenance and later, in her tendered findings of fact and conclusions of law, by requesting $2,000.00 per month in maintenance for 15 years. She stated that her monthly expenses totaled $4,752.00; that Neil's totaled $4,635.00; and that Neil received $8,784.47 per month in retirement benefits. This is sufficient to comply with the Rule under the circumstances of this case, and the family court erred in determining that she had not complied. However, because the family court went on to consider the merits of Sheryl's request for maintenance, this error is harmless.

Second, Sheryl addresses the merits of the court's decision not to award maintenance. KRS 403.200 addresses when an award of maintenance is appropriate and the relevant factors a court must consider. The court must first determine whether a spouse meets the threshold for maintenance, which requires proof that the spouse, "(a) [l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (b) [i]s unable to support himself through appropriate employment[.]" KRS 403.200(1). If the threshold is met, the court may award maintenance after considering all relevant factors as set forth in KRS 403.200(2). Here, the family court determined that

Sheryl had not met the threshold as she was able to meet her reasonable needs with the marital property, including retirement benefits, she had been awarded. It also noted that Sheryl had not presented any evidence of her expenses showing a specific amount that would be necessary for her to live, and she had not moved to admit the documents or disclosure that had been provided to the court prior to the hearing.

Sheryl's argument hinges on her prior argument that the family court erred in its division of Neil's retirement accounts, which, she contends, meant that the court could not have performed a meaningful analysis pursuant to KRS 403.200(2). We have already held that the court did not err in its division of Neil's retirement accounts. And we find no error in the court's approximation that Sheryl would be entitled to 22.5% of Neil's pension income from the two accounts, which would increase her gross income by $755.12 and $934.64, in addition to the $673.00 she received in social security benefits each month and half of Neil's other retirement account. In addition, Sheryl received sufficient marital property to provide for her reasonable needs, including $110,457.00 for the sale of the marital home; $34,500.00 for the sale of the Mercedes RV; $11,529.00 for the sale of personal property; $35,00.00 in assets (including a pickup truck, the horse, a horse trailer, and saddles); and $33,633.35 for her portion of tax refunds, stimulus funds, and bank accounts. And we note that while Sheryl generally spent the marriage at

home raising the children, she had worked as a veterinary aide for several years during the marriage. Finally, we find no merit in Sheryl's argument regarding the disparity in Neil's retirement income versus her own. Sheryl is only entitled to a portion of Neil's retirement benefits that were accrued during the marriage; Neil had been contributing to his retirement accounts since 1977, and the parties did not get married until 1989.

Based upon the marital property Sheryl received, including an approximation of income from Neil's retirement accounts, we find no abuse of discretion in the family court's determination that she was not entitled to an award of maintenance pursuant to KRS 403.200(1).

We shall now turn to the issues Sheryl raises in her second appeal. For her first argument, Sheryl argues that the family court erred when it included a statement in the November 3, 2021, order that it would not be final and appealable until the QDROs were filed, which occurred on November 17, 2021. Sheryl filed her notice of appeal and Neil filed his CR 59.05 motion to alter, amend, or vacate on November 12, 2023, within 10 days of the entry of the order and prior to the entry of the QDROs. She asserts that the family court did not cite any authority to support its attempt to extend the time in which a judgment would become final and appealable. We note that "[a]s a general rule, the filing of a notice of appeal divests the trial court of jurisdiction to rule on any issues while the appeal is

pending, except with respect to issues of custody and support in a domestic relations case. *Johnson v. Commonwealth*, 17 S.W.3d 109, 113 (Ky. 2000)."

*Goodlett v. Brittain*, 544 S.W.3d 656, 665 (Ky. App. 2018).

Neil relies upon the Supreme Court of Kentucky's analysis in *Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 418 (Ky. 2010), to support his position that the family court had the authority to delay finality until the entry of the QDROs.

> [T]he judgments entered on May 12, 2003, were not final because they were attached to an order which specifically stated that "these Judgments are not final and appealable and are subject to further rulings on the motions currently pending to alter, amend or vacate." The order specifically reserved for future adjudication the trial court's ruling on KLC's January 31, 2003, "Amended Motion for JNOV; Motion for New Trial and/or Motion to Alter, Amend or Vacate."
>
> CR 54.01 defines a final judgment as follows:
>
> A judgment is a written order of a court adjudicating a claim or claims in an action or proceeding. A final or appealable judgment is a final order *adjudicating all the rights of all the parties in an action or proceeding*, or a judgment made final under Rule 54.02. Where the context requires, the term "judgment" as used in these rules shall be construed "final judgment" or "final order". (Emphasis added).
>
> "[I]f an order entered in a cause does not put an end to the action, but leaves something further to be done

-24-

before the rights of the parties are determined, it is interlocutory and not final." *Hubbard v. Hubbard*, 303 Ky. 411, 197 S.W.2d 923, 924 (Ky. 1946). As the trial court's May 12, 2003, order left something further to be done (i.e., to rule on KLC's pending motions), the attached judgments were not final judgments. Simply put, at the time the judgments were entered, all the rights of all the parties had not been adjudicated. Accordingly, the principle that a trial court loses its jurisdiction ten days following the entry of the final judgment is not applicable. The judgments were not final. Similarly, the 30-day period for filing an appeal to this Court pursuant to CR 73.02 did not begin to run. It follows that the trial court retained jurisdiction to enter the August 8, 2003, order and that the order was not "null and void" as asserted by the Hills.

*Hill*, 327 S.W.3d at 418. We agree with Neil that the court had the authority to delay finality in this instance. The QDROs were an integral part of Sheryl's award as they set forth her designated share of Neil's retirement accounts.

In addition, we agree with the family court that it retained jurisdiction under CR 73.02(1), which was still in effect at that time and governed the procedure related to the filing of a notice of appeal. It stated, in relevant part:

> (e) The running of the time for appeal is terminated by a timely motion pursuant to any of the Rules hereinafter enumerated, and the full time for appeal fixed in this Rule commences to run upon entry and service under Rule 77.04(2) of an order granting or denying a motion under Rules 50.02, 52.02 or 59, except when a new trial is granted under Rule 59.
>
> > (i) If a party files a notice of appeal after the date of the docket notation of service of the judgment required by CR 77.04(2), but

-25-

before disposition of any of the motions
listed in this rule, the notice of appeal
becomes effective when an order disposing
of the last such remaining motion is entered.

(ii) A party intending to challenge a post-
judgment order listed in this rule, or a
judgment altered or amended upon such
motion, must file a notice of appeal, or an
amended notice of appeal, within the time
prescribed by this rule measured by the date
of the CR 77.04(2) docket notation
regarding service of the order disposing of
the last such remaining motion.

(iii) No additional fee is required to file an
amended notice.

This Rule is now found in RAP 3(E), which addresses the effect of a motion on a

notice of appeal and provides in relevant part:

(2) If a party timely files in the trial court any of the
following motions under the Kentucky Rules of Civil
Procedure, the time to file an appeal runs for all parties
from the entry of the order disposing of the last such
remaining motion:  CR 50.02; CR 52.02; or CR 59,
except when a new trial is granted under CR 59.  No
motions filed under any other civil rule will toll the time
to file a notice of appeal.

(3) If a party files a notice of appeal after the date of the
docket notation of service of judgment in paragraph
(A)(2) above, but before disposition of any timely
motions under CR 50.02, CR 52.02, or CR 59, the trial
court retains jurisdiction to rule on the motion.  The
appellant shall promptly move the appellate court to hold
the appeal in abeyance pending a decision on such
motion.  When the trial court has entered an order

disposing of the motion, the appellant shall promptly file a copy with the clerk of the appellate court.

Based upon either rule, the family court did not lose jurisdiction to rule on Neil's CR 59.05 motion. Both the notice of appeal and the CR 59.05 motion were filed on the same day, which triggered CR 73.02(1)(e)(i): "If a party files a notice of appeal after the date of the docket notation of service of the judgment required by CR 77.04(2), but before disposition of any of the motions listed in this rule, the notice of appeal becomes effective when an order disposing of the last such remaining motion is entered." Accordingly, the family court retained jurisdiction to rule on Neil's CR 59.05 motion.

For her second argument, Sheryl argues that the family court's modification of the division of marital property was not equitable because it required her to repay Neil $7,300.00. KRS 403.190(1) mandates that the court "divide the marital property . . . in just proportions considering all relevant factors[.]" We review a family court's division of marital assets for abuse of discretion. *Young v. Young*, 314 S.W.3d 306, 308 (Ky. App. 2010).

Here, the family court recognized that it had made a miscalculation in the value of personal property Neil had been awarded. In the amended decree, the family court awarded Sheryl personal property items with a fair market value of $35,000.00, including a 2014 Ford pickup worth $21,000.00. It awarded Neil personal property items with a fair market value that it listed as totaling $27,680.00

-27-

when in actuality the items had a fair market value of $9,180.00. These items included a 2005 Honda Trike and a 2008 Honda Silverwing with fair market values of $4,300.00 and $2,100.00, respectively. This error in calculation meant that Neil had been awarded $18,500.00 less than the court intended. The court opted to modify its award by equitably dividing the value of the three vehicles between the parties and ordering Sheryl to pay Neil half of the difference in values between her vehicle and the vehicles awarded to Neil, rather than redistributing the personal property. We find this to be an equitable solution and find no abuse of discretion in the modification of the division of marital property.

For her third and final argument, Sheryl seeks review of the family court's *sua sponte* modification of the amended decree related to the paragraph on maintenance. It appears that the modification was meant to eliminate the last sentence of paragraph 29 of the November 3, 2021, amended decree, which was apparently a clerical error as that sentence did not have anything to do with maintenance. The court went on to add several sentences relating to Sheryl's failure to submit documentary evidence, including the final disclosure statement, at the hearing. We have already addressed the issue of Sheryl's compliance with FCRPP 5 earlier in the Opinion in Sheryl's favor and therefore decline to address it any further.

For the foregoing reasons, the orders of the Barren Family Court are affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:        BRIEFS FOR APPELLEE:

David F. Broderick             Benjamin D. Rogers
R. Taylor Broderick           Glasgow, Kentucky
Bowling Green, Kentucky